**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RITA CAMACHO, on behalf of
herself and all others similarly
situated,

    *Plaintiff-Appellant,*

v.

BRIDGEPORT FINANCIAL, INC.; RAY
LEWIS; CHRISTINA HARBRIDGE,

    *Defendants-Appellees.*

No. 07-15297

D.C. No.
CV-04-00478-
CRB/MEJ

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
March 13, 2008—San Francisco, California

Filed April 22, 2008

Before: Stephen Reinhardt, Melvin Brunetti, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Brunetti

**COUNSEL**

Richard M. Pearl, Law Offices of Richard M. Pearl, Berkeley, California; O. Randolph Bragg, Horwitz, Horwitz & Associates, Chicago, Illinois; Irving L. Berg, The Berg Law Group, Corte Madera, California; and Richard J. Rubin, Santa Fe, New Mexico, for the plaintiff-appellant.

Mark E. Ellis and June D. Coleman, Ellis, Coleman, Poirier, La Voie & Steinheimer, LLP, Sacramento, California, for the defendants-appellees.

**OPINION**

BRUNETTI, Circuit Judge:

Rita Camacho (Camacho) appeals the district court's order awarding her $77,069.36 in merits fees, costs, and fees-on-fees. The district court determined Camacho's award by multiplying the number of hours worked by each of her three attorneys by an hourly rate of $200, by compensating Camacho for costs, and by awarding Camacho a "flat award" of $500. We have jurisdiction under 28 U.S.C. § 1291, and we vacate and remand.

## I. Facts and Proceedings Below

In the underlying action, Camacho, a debtor, sued Bridgeport Financial, Inc. (Bridgeport Financial), a debt collector, in

a putative class action alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692g, 1692e. Camacho alleged that Bridgeport Financial misrepresented the rights of consumers in its initial collection letter by requiring her to dispute her debt in writing. Bridgeport Financial filed a motion to dismiss, arguing that section 1692g(a)(3) implicitly requires disputes to be made in writing. The district court denied Bridgeport Financial's motion to dismiss, certified the issue for interlocutory appeal, and we affirmed in a published opinion. *See* 430 F.3d 1078, 1082-83 (9th Cir. 2005). We held that the district court correctly denied Bridgeport Financial's motion to dismiss because there is no writing requirement implicit in section 1692g(a)(3), and that Bridgeport Financial violated that section insofar as it stated that disputes must be made in writing. *Id.* at 1082.

On remand, the litigation focused on class certification, Bridgeport Financial's net worth, and the class remedy. After the district court approved a statewide class, consisting of more than 7,000 members, the parties settled. Pursuant to the parties' Class Action Settlement Agreement, the court ordered Bridgeport Financial to pay a cy pres award of $341.50 to Legal Services of Northern California for use in consumer education or representation, and $1,000 in actual and statutory damages to Camacho. Bridgeport Financial also agreed to pay reasonable and necessary attorneys' fees and costs, to be determined by the court absent an agreement by the parties. The parties did not reach an agreement and Camacho filed her Motion for an Award of Costs and Attorney Fees.

During the course of this litigation, three attorneys represented Camacho, Irving L. Berg (Berg), O. Randolph Bragg (Bragg), and Richard J. Rubin (Rubin). Berg and Bragg represented Camacho during proceedings in the district court, and Camacho retained Rubin to handle the interlocutory appeal.

In her motion, Camacho sought to recover fees and costs totaling $167,434.36. This total included $56,142.50 (132.1

hours x $425/hour) in fees and $192.41 in costs for Berg; $72,772.50 (156.5 hours x $465/hour) in fees and $5,823.71 in costs for Bragg; $1,495.00 (13 hours x $115/hour) in fees for Bragg's law clerk/associate; $115.00 (1 hour x $115/hour) for the services of Bragg's paralegal; and $30,100.00 (60.2 hours x $500/hour) in fees and $793.24 in costs for Rubin. Included in the attorneys' requests were hours spent pursuing fees. Berg, Bragg, and Rubin each provided a declaration supporting their respective fee/costs requests, and Camacho also filed declarations from two additional attorneys in support of her motion. Bridgeport Financial filed an opposition to Camacho's motion which included numerous exhibits and declarations from two more attorneys.

Camacho also explained in her motion that her attorneys would submit a supplemental declaration detailing additional time and costs expended. Bragg ultimately did so, filing a supplemental declaration wherein he sought an additional $12,373.00: $7,533.00 (16.2 hours x $465/hour) in fees for his services, and $4,840.00 (24.2 hours x $200/hour) in fees for his law clerk/associate's services. Although Bridgeport Financial objected to portions of Camacho's three attorneys' declarations, and objected to the two additional attorneys' declarations and Bragg's supplemental declaration in their entirety, the district court never ruled on these objections and Bridgeport Financial never requested a ruling.

In its Second Amended Order, the district court noted that Camacho sought to recover $6,809.36 in litigation expenses and $160,625.00 in fees. This total reflects the amount requested in Camacho's initial motion, but does not account for the amount requested in Bragg's supplemental declaration. The court went on to explain that:

> Here, the Court is satisfied that the number of hours spent upon this case by [Camacho's] three attorneys . . . is reasonable. The attorneys spent their time on motions brought by [Bridgeport Financial] and

defending the case against an appeal brought by [Bridgeport Financial]. While the Court acknowledges that [Camacho's] three attorneys were already exceedingly well-versed on the narrow legal question presented in the case, the Court nonetheless finds that the hours spent on the matter were reasonable. The Court holds, however, that it would be unreasonable on the facts of this case to award the full amount requested by these attorneys. Rather than awarding the full hourly rate suggested by [Camacho], the Court finds, in rough accord with numerous other courts that have considered the issue in published and unpublished opinions, that a reasonable rate for fees for an action brought for the violation of a mandatory provision of the FDCPA is $200.00 per hour.

(Footnote omitted.) Therefore, the court awarded Berg $26,420.00 (132.1 hours x $200/hour), Bragg $31,300.00 (156.5 hours x $200/hour), and Rubin $12,040.00 (60.2 hours x $200) in fees. The court also awarded Berg $192.41, Bragg $5,823.71, and Rubin $793.24, their requested costs. The court then held that the fees submitted by Bragg on behalf of his law clerk/associate ($1,495.00) and paralegal ($115.00) were reasonable, but did not account for these amounts in its ultimate award. To this point, the court awarded Camacho $6,809.36 in costs, and $69,760.00 in fees.

Finally, the court found that while Camacho indicated an intent to seek a supplemental award of costs, expenses, and fees, a substantial award of fees-on-fees would be inappropriate in this case. The court explained that:

Here, [Camacho's] counsel regularly represent litigants in FDCPA cases, and they are therefore experienced with the law governing awards of attorneys' fees and the process for recouping them. Indeed, as [Bridgeport Financial] points out, the materials sub-

mitted by [Camacho's] attorneys in support of the
motion for costs and attorneys' fees in this case are
virtually identical to the materials that these attor-
neys have submitted in other cases.

The court concluded that "[w]here . . . the attorneys seeking
fees support their motion with materials that are substantially
unchanged from those filed by them in numerous other cases
. . . it would be inappropriate to award fees on fees on an
hourly basis," and instead, the court awarded a "flat award"
of $500. In the end, the district court awarded Camacho a
total of $77,069.36 in fees and costs ($69,760.00 in fees,
$6,809.36 in costs, and a $500 "flat award"). Camacho
appealed.

## II.   Standard of Review

"We review the factual determinations underlying an award
of attorneys' fees for clear error and the legal premises a dis-
trict court uses to determine an award de novo." *Ferland v.
Conrad Credit Corp.*, 244 F.3d 1145, 1147-48 (9th Cir. 2001)
(per curiam) (citations omitted). "If we conclude that the dis-
trict court applied the proper legal principles and did not
clearly err in any factual determination, then we review the
award of attorneys' fees for an abuse of discretion." *Id.* at
1148.

## III.   Discussion

**[1]** "Generally, litigants in the United States pay their own
attorneys' fees, regardless of the outcome of the proceedings."
*Stanton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003).
However, "[i]n order to encourage private enforcement of the
law . . . Congress has legislated that in certain cases prevailing
parties may recover their attorneys' fees from the opposing
side. When a statute provides for such fees, it is termed a 'fee
shifting' statute." *Id.* The FDCPA is one such statute, provid-
ing that any debt collector who fails to comply with its provi-

sions is liable "in the case of any successful action . . . [for] the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The FDCPA's statutory language makes an award of fees mandatory. *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995). "The reason for mandatory fees is that congress chose a 'private attorney general' approach to assume enforcement of the FDCPA." *Id.*; *see also Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) (noting that the FDCPA "mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general"). Here, pursuant to the Settlement Agreement, Bridgeport Financial agreed to pay reasonable and necessary attorneys' fees and costs.

**[2]** "District courts must calculate awards for attorneys' fees using the 'lodestar' method," *Ferland*, 244 F.3d at 1149 n.4, and the amount of that fee must be determined on the facts of each case, *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Ferland*, 244 F.3d at 1149 n.4 (citation and internal quotation marks omitted). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Id.*

Here, the district court first found that Camacho's three attorneys spent a reasonable number of hours on this case, specifically noting that they spent their time on motions brought by the defendant and successfully defending against an interlocutory appeal. The court made this finding after recognizing that the attorneys were exceedingly well-versed on the narrow legal question presented. Bridgeport Financial does not challenge this reasonableness finding.

The district court then decided that $200 was a reasonable hourly rate for the attorneys' services, holding that on the

facts of this case it would be unreasonable to compensate Camacho's three attorneys at their requested hourly rates of $425, $465, and $500. The court did not specifically identify which facts made the attorneys' requested hourly rates unreasonable. Instead, in a single footnote, the court cited eleven cases to support its finding that $200 was in "rough accord" with numerous other courts—all but one located in other communities—that had considered the issue in published and unpublished opinions.

We acknowledge that the "district court has a great deal of discretion in determining the reasonableness of the fee," and that, as a general rule, we defer to its determination. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). This discretion is "appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley*, 461 U.S. at 437. Here, however, the district court erred by not identifying the relevant community, and by not explaining what was the prevailing hourly rate in that community for similar services by lawyers of reasonably comparable skill, experience and reputation, as well as by awarding a "flat award" of $500 for fees-on-fees.

## A.    Relevant community

**[3]** Camacho argues that the district court applied the wrong legal standard when determining a reasonable hourly rate because it did not consider rates in the relevant community. Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). "[R]ates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Id.* (citation and internal quotation marks omitted). Neither party contends that an exception to the general rule

applies in this case; therefore, the relevant community is the Northern District of California (the Northern District).

**[4]** Bridgeport Financial argues that the district court "expressly stated [that its] decision was based on the facts of the case," and so implicitly identified the Northern District as the relevant legal community. There is no indication in the record that the district court actually did so. We review the adequacy of the district court's own articulated reasoning, not the after-the-fact rationalizations offered by counsel. The district court cited eleven cases in its order, ten of which were decided outside the Northern District. So far as we can tell, the court relied almost exclusively on cases decided in the Southern District of Ohio, the District of Oregon, the Eastern District of New York, the Bankruptcy Court of the Southern District of Florida, and the Southern District of New York, none of which is the relevant community for determining Camacho's fee award. While the court's order includes one case from the Northern District, there is no indication that the court considered this case to be any more relevant to its analysis than the ten cases from outside the relevant community. We also note that the district court made no mention of a case decided in the Northern District, and cited by Bragg in his declaration, awarding Bragg fees at an hourly rate of $435. *See Defenbaugh v. JBC & Assocs., Inc.*, No. C-03-0651 JCS, 2004 WL 1874978, at *7 (N.D. Cal. Aug. 10, 2004), *aff'd by unpublished mem.*, No. 04-16866, 2006 U.S. App. LEXIS 19930 (9th Cir. Aug. 3, 2006).

**[5]** Therefore, we remand for the district court to make a determination of the reasonable hourly rate on the basis of the prevailing rates in the Northern District, or a community shown to be comparable to the Northern District.

## B. Prevailing market rate

**[6]** While "[w]e . . . recognize that determining an appropriate 'market rate' for the services of a lawyer is inherently

difficult," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), the established standard when determining a reasonable hourly rate is the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Barjon*, 132 F.3d at 502 (internal quotation marks omitted). Here, the district court failed to assess or determine the prevailing hourly rate in the Northern District for the work performed by Camacho's attorneys.

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. As we have noted, "[a]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Here, in addition to filing declarations from her three attorneys, Camacho also submitted declarations from two other attorneys. One of these attorneys declared that Berg, Bragg, and Rubin's requested rates of $425, $465, and $500 were within the range of prevailing market rates for attorneys with similar experience and abilities in the Northern District. Similarly, the second attorney declared that the hourly rates charged by Camacho's three attorneys were consistent with, if not slightly lower than, the prevailing market rates for attorneys with comparable skill, qualifications, experience, and reputations.

However, declarations filed by the fee applicant do not conclusively establish the prevailing market rate. "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challeng-

ing the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Gates*, 987 F.2d at 1397-98. In support of its opposition to Camacho's motion, Bridgeport Financial filed the declarations of two attorneys from the law firm representing it in this case. One attorney declared that the reasonable market rate for the services provided by Camacho's three attorneys was in the $200 to $250 range, or perhaps even less. The other attorney's declaration (which was made in another case), indicated that the reasonable market rate for the services provided to the plaintiff in *that* case was in the $200 to $250 an hour range, or perhaps even less.

**[7]** However, when the district court held that it would be unreasonable on the facts of this case to award the full hourly rates requested by Camacho's attorneys, the court did not identify which facts led to this conclusion, nor did the court indicate why an hourly rate of $200 was "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. The district court did not discuss the declarations filed by either party, nor did the court distinguish between Camacho's three attorneys, though they each sought different hourly rates. We recognize that cases decided in the Northern District offer a wide spectrum of reasonable hourly rates, even for work performed by the same attorney. *Compare Defenbaugh*, 2004 WL 1874978, at *7 ($435 a reasonable hourly rate for Bragg's services), *with Johnson v. Credit Int'l, Inc.*, No. C-03-100 SC, 2005 WL 2401890, at *4 (N.D. Cal. July 28, 2005) ($250 a reasonable hourly rate for Bragg's services), *aff'd in part and vacated and remanded in part by unpublished mem.*, 05-16696, 2007 WL 3332813, at *2 (9th Cir. Nov. 8, 2007). In light of the above, we remand to the district court with instructions to determine the proper amount of fees applying the legal standard set forth above, and specifically by determining the prevailing hourly rate in the Northern District for work that is similar to that performed

in this case, by attorneys with the skill, experience and reputation comparable to that of Camacho's attorneys.

We also note that in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services. *Bell v. Clackamas County*, 341 F.3d 858, 869 (9th Cir. 2003) (holding that it was an abuse of discretion to apply market rates in effect more than two years before the work was performed). Each of Camacho's attorneys began their services at different points in time, Berg in December 2003, Bragg in April 2004, and Rubin in January 2005. It is clear, therefore, that on remand the district court should not treat as dispositive the cases decided in 1998, 2000, and early in 2001 when determining the prevailing market rate for any of Camacho's attorneys, as it did in its Second Amended Order.

Camacho also argues that the district court erred by relying solely on FDCPA cases in determining the prevailing market rate. Camacho is correct that "[i]n order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases." *Tolentino*, 46 F.3d at 652; *see also Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 706 (9th Cir. 1986) (explaining that reasonable hourly rate must be based on "customary fees in cases of like difficulty"). The record contradicts Camacho's assertion, however, that the court considered *solely* FDCPA cases, as the court included a trademark infringement case in its eleven-case footnote. *See Yahoo!, Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179 (N.D. Cal. 2004). Again, however, the district court did not explain how this non-FDCPA case factored into its determination of the prevailing market rate, or whether the court limited its analysis primarily to FDCPA cases. Therefore, we simply note that on remand the district court should not restrict its analysis to FDCPA cases, or assume, as it apparently did, that Camacho's

particular FDCPA case was like the typical "action brought for the violation of a mandatory provision of the FDCPA" in terms of the complexity and difficulty of her attorneys' services, particularly given their successful defense of Bridgeport Financial's interlocutory appeal.

## C.   Fees-on-fees

**[8]** Camacho also argues that the district court abused its discretion by awarding a "flat award" of $500 for fees-on-fees rather than applying the lodestar method to determine a reasonable fee. "In statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable." *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-660 (9th Cir. 1985). This is so because it would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee. *Id.* at 660; *Kinney v. Int'l Bhd. of Elec. Workers*, 939 F.2d 690, 695 (9th Cir. 1991). However, "[a] request for attorney's fees should not result in a second major litigation," *Hensley*, 461 U.S. at 437; and "[f]or rather obvious practical reasons we are loath to disturb a ruling by a district judge on a request for second-round attorneys' fees." *Muscare v. Quinn*, 680 F.2d 42, 44 (7th Cir. 1982).

Here, the district court found that a substantial award of fees-on-fees would be inappropriate because Camacho's attorneys regularly represent litigants in FDCPA cases, they are experienced with the law governing fees and the process for recouping them, and the materials submitted in this case were virtually identical to those submitted by the attorneys in other cases. Therefore, the court concluded, it would be inappropriate to award fees-on-fees on an hourly basis; and instead, the court awarded a "flat award" of $500.

Despite a district court's discretion in determining the amount of a fee award, it "must calculate awards for attor-

neys' fees using the 'lodestar' method." *Ferland*, 244 F.3d at 1149 n.4. While in most cases the lodestar figure is presumptively reasonable, "in rare cases, a district court may make upward or downward adjustments to the presumptively reasonable lodestar on the basis of those factors set out in *Kerr v. Screen Extras Guild, Inc.*, 526, F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation." *Gates*, 987 F.2d at 1402 (internal citations omitted).[1]

**[9]** Here, however, rather than calculating the lodestar, the district court concluded that "it would be inappropriate to award fees on fees on an hourly basis" and awarded Camacho a "flat award" of $500 without discussing, or even mentioning, Bragg's supplemental declaration. The court offered no authority to support its conclusion that the lodestar method could be abandoned in favor of a "flat award," Bridgeport Financial does not cite any, and we have found none. Nor did the district court articulate any reasons why the lodestar method could not adequately account for its specific concerns in this case.

**[10]** Citing *Ferland*, Bridgeport Financial notes that a district court may reduce attorneys' fees by a percentage, so long as the court sets forth clear and concise reasons for adopting this approach. *See Ferland*, 244 F.3d at 1151 (explaining that the district court must both "explain adequately the decision to cut the lodestar hours . . . by the across-the-board method" and "provide . . . some explanation for the precise reduction chosen"); *Gates*, 987 F.2d at 1400 (recognizing that "percentages indeed are acceptable, and perhaps necessary, tools for district courts fashioning reasonable fee awards"). However,

---

[1]The relevant factors include, for example, the preclusion of other employment by the attorney due to acceptance of the case; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases. *See Kerr*, 526 F.2d at 70.

the district court did not make a percentage reduction *after* calculating the lodestar; instead, the district court abandoned the lodestar method in favor of a $500 "flat award." While we recognize a district court's discretion to adjust the presumptively reasonable lodestar figure, the fact remains that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "This circuit requires a district court to calculate an award of attorneys' fees by *first* calculating the 'lodestar' " before departing from it. *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000) (emphasis added). Therefore, the district court erred by awarding a "flat award," and on remand the court should calculate the lodestar to determine a presumptively reasonable fees-on-fees award before assessing whether upward or downward adjustments are warranted.

Furthermore, while it is undisputed that Camacho's initial motion for costs and fees included time spent pursuing fees, the district court failed to explain why it applied the lodestar method (albeit with the errors identified above) to these fees-on-fees requests, but refused to do so for any supplemental requests. In the first part of its order, after acknowledging that the attorneys were "already exceedingly well-versed on the narrow legal question presented" the district court found all of the attorneys' hours in Camacho's initial motion to be reasonable and computed their fee awards accordingly. However, in the second part of its order, the court changed course, abandoned the lodestar method, and awarded a $500 "flat award" because the attorneys supported their motion with substantially unchanged materials. The court offered no explanation as to why it determined Camacho's fees-on-fees award in part using the lodestar method, and in part by awarding a $500 "flat award," when the court's concerns appear to focus on hours included in Camacho's initial application, which the court found reasonable. This apparent internal inconsistency

is itself sufficient to remand for a redetermination of the fees-on-fees award employing the proper legal standard.

Finally, as far as we can tell, despite the court's finding that the $1,495.00 in fees requested by Camacho for Bragg's law clerk/associate's work and the $115.00 requested for the services rendered by Bragg's paralegal were reasonable, the court did not include these amounts in its final award. Therefore, on remand if it concludes again that Camacho is not entitled to fees for these services, the court shall explain the legal basis for that conclusion.

**VACATED and REMANDED.**