**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRUCE W. CHRISTENSEN,
*Petitioner,*

v.

STEVEDORING SERVICES OF AMERICA;
HOMEPORT INSURANCE COMPANY;
and DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
*Respondents.*

No. 07-70247

Agency Nos.
BRB 03-0302 and
03-0761

AREL PRICE,
*Petitioner,*

v.

STEVEDORING SERVICES OF AMERICA;
HOMEPORT INSURANCE COMPANY;
EAGLE PACIFIC INSURANCE
COMPANY; and DIRECTOR, OFFICE OF
WORKERS' COMPENSATION
PROGRAMS,
*Respondents.*

No. 07-70297

Agency Nos.
01-0632 and
01-0632A

OPINION

Appeal from Decisions and Orders of
the Benefits Review Board

Argued and Submitted
November 17, 2008—Portland, Oregon

Filed March 2, 2009

2395

Before: William A. Fletcher and Raymond C. Fisher, Circuit Judges, and John M. Roll, Chief District Judge.*

Opinion by Judge Roll

---

*The Honorable John M. Roll, Chief United States District Judge for the District of Arizona, sitting by designation.

**COUNSEL**

Charles Robinowitz, Portland, Oregon; Joshua T. Gillelan II (argued), Longshore Claimants' National Law Center, Washington, D.C., for the petitioners-appellants.

John Dudrey, Williams Fredrickson, LLC, Portland, Oregon, for the respondents-appellees.

**OPINION**

ROLL, Chief District Judge:

This is a consolidated appeal from awards of attorney's fees by the Benefits Review Board of the United States Department of Labor ("BRB"). Petitioners Christensen and Price appeal the amount of attorney's fees awarded to them by the BRB under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950. We have jurisdiction under 33 U.S.C. § 921(c), and we vacate and remand.

**Background**

**Christensen, Appeal No. 07-70247**

On February 12, 2004, with an appeal still pending, Petitioner Bruce W. Christensen's attorney, Charles Robinowitz,

filed an affidavit of attorney's fees—for work done on the fee appeal to the BRB only—requesting an hourly rate of $250 per hour for his services. The BRB awarded Robinowitz his requested hourly rate.

Thereafter, on April 13, 2006, Robinowitz filed an "Amended Affidavit of Attorney Fees," requesting an increased rate of $350 per hour. On July 25, 2006, the BRB issued an order, stating that "an hourly rate of $250 remains appropriate in this geographic region and adequately compensates counsel for the delay in payment of the previously awarded attorney's fee."

Robinowitz then filed a Motion for Reconsideration, to which he attached a copy of the Morones Survey of 2004 showing the average hourly rates at that time for commercial litigation attorneys in Portland, Oregon; a copy of the *Laffey* Matrix,[1] which supported an hourly rate in the range of $405 to $425 per hour; and copies of federal personnel pay rates for Washington, D.C., and Portland, Oregon, to aid the BRB in interpreting the *Laffey* Matrix.

On November 17, 2006, the BRB issued an order denying Robinowitz's Motion for Reconsideration, rejecting counsel's assertions and finding that the fee awarded was in compliance with 20 C.F.R. § 802.203(d)(4).

**Price, Appeal No. 07-70297**

On May 30, 2002, Robinowitz, representing Petitioner Arel Price, filed an affidavit of attorney's fees with the BRB, requesting fees of $237.50 per hour. The BRB refrained from granting his fee petition because the case was, at that time,

---

[1]This matrix derives from the hourly rates allowed by the district court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985).

pending on appeal, but stated that Robinowitz could re-file a petition for fees if his appeal before the Ninth Circuit was successful.

On June 5, 2006, following a favorable result from the Ninth Circuit, Robinowitz filed a "Third Supplemental Affidavit of Attorney Fees" with the BRB. Therein, Robinowitz requested an increased rate of $350 per hour, citing much of the same support contained in his *Christensen* affidavits, including the *Laffey* matrix. The BRB's July 26, 2006 order on the requested fees stated that a rate of $250 was appropriate in the geographic region and adequately compensated counsel for the delay in payment of the attorney's fee. Robinowitz's motion for reconsideration was denied by the BRB on November 30, 2006.

## Standard of Review

This court reviews the BRB's decisions for abuse of discretion. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007). The BRB "is not a policymaking agency," so "its interpretation of the LHWCA is not entitled to any special deference." *McDonald v. Dir., OWCP*, 897 F.2d 1510, 1512 (9th Cir. 1990). Nevertheless, "the court must . . . respect the Board's interpretation of the statute where such interpretation is reasonable and reflects the policy underlying the statute." *Id.*[2]

## Discussion

[1] This case involves application of § 928(a) of the LHWCA, which provides for a "reasonable attorney's fee," and 20 C.F.R. § 802.203, which implements § 928(a) in regard to services performed before the Benefits Review Board.[3]

---

[2]This is a different level of deference than that accorded to the OWCP Director. The OWCP Director's interpretation of the LHWCA is afforded "considerable weight" by this Court. *McDonald*, 897 F.2d at 1512.

[3]20 C.F.R. § 802.203 states that the "rate awarded by the Board shall be based on what is reasonable and customary in the area where the ser-

The definition of a "reasonable attorney's fee" pursuant to § 928(a) has evolved toward the definition of "reasonable" used in all federal fee-shifting statutes. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Anderson v. Dir., OWCP*, 91 F.3d 1322, 1324 (9th Cir. 1996); *Nelson v. Stevedoring Servs. of America*, 29 B.R.B.S. 90, 97 (1995).

[2] The "lodestar method" is the fundamental starting point in determining a "reasonable attorney's fee," *see Dague*, 505 U.S. at 562 ("lodestar" is the "guiding light of [the Court's] fee-shifting jurisprudence"), and this is true as to computation of attorney's fees under § 928(a) of the LHWCA.[4] *See Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 955 (9th Cir. 2007). Various other factors have been held relevant to the setting of appropriate attorney's fees, including: (1) the time and labor

---

vices were rendered for a person of that particular professional status," and that the

> fee approved shall be reasonably commensurate with the necessary work done and shall take into account the quality of the representation, the complexity of the legal issues involved, the amount of benefits awarded, and, when the fee is to be assessed against the claimant, shall also take into account the financial circumstances of the claimant. A fee shall not necessarily be computed by multiplying time devoted to work by an hourly rate.

20 C.F.R. § 802.203(d)-(e). The regulation further mandates that "[n]o contract pertaining to the amount of a fee shall be recognized." § 802.203(f). 20 C.F.R. § 802.203(e)-(f) is specific to the Benefits Review Board but mirrors, with one exception, 20 C.F.R. § 702.132(a), which pertains to all entities that award attorney's fees under the LHWCA. The difference between § 802.203(e)-(f) and § 702.132(a) is an additional sentence specific to § 802.203(e), which states that "[a] fee shall not necessarily be computed by multiplying time devoted to work by an hourly rate." Here, the BRB's decisions in both cases reveal that the BRB computed the reasonable fee by multiplying the hours submitted by an hourly rate, consistent with the so-called "lodestar method." *See infra* n.4.

[4]This method "requires the court to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 955 (9th Cir. 2007).

required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and the results obtained; (8) the experience, reputation and ability of the attorneys; (9) the "undesirability" of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 n.2 (9th Cir. 2000).

**[3]** In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court held that "reasonable fees" in 42 U.S.C. §1988 claims "are to be calculated according to the prevailing market rates in the relevant community." *Id.* at 895. The Court further held that "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." 465 U.S. at 896 n.11; *see also Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003) ("A court awarding attorney fees must look to the prevailing market rates in the relevant community." (citing *Blum*, 465 U.S. at 895)).

**Relevant Community**

**[4]** Recently, in *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973 (9th Cir. 2008), this Court vacated and remanded an award of attorney's fees in a Fair Debt Collection Practices Act ("FDCPA") action, because, among other reasons, the district court failed to make findings regarding what constituted the "relevant community" or the appropriate market rate. *Id.* at 979-80.

**[5]** The relevant community is generally defined as "the forum in which the district court sits." *Id.* at 979 (citing *Bar-*

*jon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). In *Newport News Shipbuilding & Dry Dock Co. v. Brown*, 376 F.3d 245 (4th Cir. 2004), the Fourth Circuit defined "relevant community," specifically for purposes of LHWCA cases, by looking solely to what other administrative law judges and the BRB awarded in other LHWCA cases in the same geographic region. *See id.* at 251. Such a limited definition of "relevant community" is problematic, however, in light of the fact that there is no private market for attorney's fees under the LHWCA. Indeed, LHWCA attorneys face criminal penalties for negotiating or entering into private fee agreements with their clients. *See* 33 U.S.C. § 928(e). We stated in *Camacho* that " '[i]n order to encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases.' " *Camacho*, 523 F.3d at 981 (quoting *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995)). We believe the concern expressed in *Camacho* with respect to fees under the FDCPA is equally applicable to fees under the LHWCA.

**Market Rate**

Petitioners also argue that the BRB should not be allowed to define "prevailing market rate" in such a way as to define the "market" only in terms of what has been awarded by ALJs and the BRB under the LHWCA. This is a legitimate point. In *Student Pub. Interest Research Group of N. J. v. AT&T Bell Laboratories*, 842 F.2d 1436, 1446 (3d Cir. 1988), in the context of public interest work fees, the Third Circuit appropriately articulated the flaw inherent in the attempt to define a "market" by simply looking to what other judges award:

> Courts that try to establish public interest market rates by looking to the going rate for public interest work therefore do not examine an independently operating market governed by supply and demand, but rather recast fee awards made by previous courts

into "market" rates. Courts adopting this micro-market approach, therefore, engage in a tautological, self-referential enterprise. They perpetuate a court-established rate as a "market" when that rate in fact bears no necessary relationship to the underlying purpose of relying on the marketplace: to calculate a reasonable fee sufficient to attract competent counsel.

*Dague* unambiguously states that the Supreme Court's caselaw concerning what constitutes a reasonable fee applies to all federal fee-shifting statutes, including the LHWCA. *Blum* requires the BRB to consider the relevant market rate when it awards attorney's fees.[5]

In *Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008), this court found unreasonable a district court's award of attorney's fees pursuant to 42 U.S.C. § 1988, because the district court had applied "what appear[ed] to be a de facto policy of awarding a rate of $250 per hour to civil rights cases," *id.* at 1115, stating that a de facto policy of "holding the line" at a flat rate does not constitute an appropriate determination of a "market rate."

---

[5]We need not reach the issue regarding the extent to which §§ 702.132 and 802.203 are entitled to *Chevron* deference by this panel. *See United States v. Mead Corp.*, 533 U.S. 218, 227 (2001) (acknowledging that when Congress expressly delegates authority to an agency, any "ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute" (citing *Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984))). We note, however, that neither § 702.132(a) nor § 802.203(d)-(f) is inconsistent with the lodestar/multiplier methodology set forth in cases such as *Van Gerwen*. Sections 702.132(a) and 802.203(d)-(e) each specifically set forth at least four of the eleven factors listed in *Van Gerwen*, and nowhere in §§ 702.132(a) or 802.203(d)-(e) is an entity forbidden from considering other factors not explicitly listed within the text of these regulations.

**Inadequacy of Basis for Review**

The July 25, 2006 order issued by the BRB in *Christensen* simply states that "an hourly rate of $250 remains appropriate in this geographic region," citing 20 C.F.R. § 802.203(d)(4), and *Anderson*. The November 17, 2006 order on Christensen's Motion for Reconsideration similarly lacks elaboration, stating only that "the fee awarded by the Board is in compliance with the regulation at 20 C.F.R. § 802.203(d)(4)," citing *Bell v. Clackamas County* and *Anderson*.

Likewise, the July 26, 2006 order issued in *Price* makes only the conclusory assertions that "[b]oth carriers object to the requested hourly rate of $275," that the BRB "agree[s] that this rate is excessive in the geographic area in which the services were performed," and that it "find[s] that a current hourly rate of $250 is appropriate in this geographic region and adequately compensates counsel for the delay in payment of the attorney's fee." The BRB's order cites 20 C.F.R. § 802.203(d)(4) and *Anderson*, but fails to explain how this regulation and case support the BRB's conclusory findings. The November 30, 2006 order on Price's Motion for Reconsideration is equally conclusory, stating only that "this Circuit does not follow the legal standard set forth in the *Laffey* Matrix," and that a $250 hourly rate for Portland, Oregon is "appropriate" for the "geographic region." It is axiomatic that "the [BRB] must adequately justify those awards so as to allow for meaningful review." *Finnegan v. Dir., OWCP*, 69 F.3d 1039, 1041 (9th Cir. 1995).

**[6]** On the record presented in these two cases, the BRB has not adequately justified its award. To satisfy the concerns expressed in *Student Public Interest Research Group*, the BRB must define the relevant community more broadly than simply fee awards under the LHWCA, and it has not done so. We do not here attempt to dictate to the BRB either what that relevant community should be or what a reasonable hourly rate in that community should be. Nor do we insist that in

every fee award decision the BRB must make new determinations of the relevant community and the reasonable hourly rate. But the BRB must make such determinations with sufficient frequency that it can be confident—and we can be confident in reviewing its decisions—that its fee awards are based on current rather than merely historical market conditions.

[7] *Blum*, of course, places the burden on the fee applicant to produce evidence of the relevant market and the rate charged in that market. In cases in which the applicant has failed to carry this burden, it may be reasonable for the BRB to look at what ALJs and the BRB had awarded in other LHWCA cases in order to ascertain a reasonable fee. *See Brown*, 376 F.3d at 251. But if the BRB believes that an applicant has failed to carry its burden, it should say why the applicant has failed to do so. Such an explanation will be useful in two ways. First, if the reasons given by the BRB would not have been anticipated by a reasonable fee applicant, it may be appropriate for the BRB to allow an applicant to cure its failure to carry the burden. Second, an explanation will enable this court properly to review the decision of the BRB.

**Delay Enhancement**

Petitioners also contend that the BRB was required to enhance the fee awards below based upon the delay in payment. Petitioners argue that the BRB erred in not enhancing the awards of attorney's fees to account for a two-year delay in payment. Respondents argue that the BRB properly considered delay in both claims, but that the delay was not enough to warrant augmenting the fees.

[8] In *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989), the Supreme Court held that, pursuant to the Civil Rights Act's[6] fee-shifting provisions, "[a]n adjustment for delay in payment is . . . an appropriate factor in the determination of what con-

---

[6]42 U.S.C. § 1988.

stitutes a reasonable attorney's fee." In *Anderson v. Director, OWCP*, 91 F.3d 1322 (9th Cir. 1996), which reviewed an attorney's fee award granted by the BRB, this court articulated the standard regarding adjustments for delays in payment as follows:

> [A]ttorney's fees 'are to be based on market rates' and such rates are based on the assumption that bills will be paid reasonably promptly; delays in payment thus deprive successful litigants of the market rates. To make up the difference, losses from delay can be compensated 'by the application of current rather than historic hourly rates or otherwise.' Thus . . . there may be some adjustment for the delay, but the method of adjustment is somewhat discretionary; it does not necessarily call for payment of the lawyer's current hourly rate.

*Id.* at 1324 (citations omitted).

The BRB has recognized that "*Jenkins* and *Dague* . . . changed the fee-shifting landscape . . . so that LHWCA cases may not be given special treatment," and thus "a delay enhancement is . . . appropriate under the Act." *Anderson*, 91 F.3d at 1324 (citing *Nelson*, 29 B.R.B.S. at 97). In *Nelson*, the BRB held that it was an abuse of discretion to fail to award a delay enhancement when there had been a delay of eleven years. In *Anderson*, which involved a fourteen year delay, this court found the delay was "even more egregious than in *Nelson* where the BRB approved an award of current rates," and ordered the OWCP to award Anderson "attorney fees at his current hourly rates." *Id.* at 1325.[7]

---

[7]In contrast, the panel in *Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997), denied a delay enhancement for both a seventeen-month delay of $11,523.40 in fees and a fourteen-month delay of $8,154.97 in fees. *Id.* at 503. *Barjon* involved a civil rights complaint brought by federal employees against the Secretary of the Navy.

**[9]** In *Anderson*, we stated that, "where the question of delay is timely raised, the body awarding the fee *must consider* this factor." *Anderson*, 91 F.3d at 1325 n.2 (citing *Nelson*, 29 B.R.B.S. at 97) (emphasis added). The two-year delay complained of by Petitioners is not so egregious or extraordinary as to require a delay enhancement. Clearly the BRB—in both cases—considered the issue of delay, but declined to view the delay as long enough to merit augmentation. This was not an abuse of discretion.

## CONCLUSION

On remand the BRB should re-evaluate its decisions and orders awarding attorney's fees in light of today's opinion. The BRB is directed to make appropriate findings regarding the relevant community and the prevailing market rate, but is not required to award a delay enhancement.

**VACATED AND REMANDED**.