**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IN THE MATTER OF GERALD R. SMITH

No. 09-80163
ORDER

Filed November 10, 2009

## ORDER

TALLMAN, Circuit Judge:

## I.  Overview

A request for review of a district judge's determination of appropriate fees sought for indigent legal representation in a felony case by counsel appointed under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, has been lodged with this court. As a delegate of our circuit's Chief Judge discharging the statutory responsibility to review claims for compensation in excess of statutorily mandated maximum amounts, *see id.* § 3006A(d)(3), I must decide whether to approve the district judge's reduction in the fees sought. Having considered the hearing transcripts, court order, correspondence, and briefing submitted by the CJA panel attorney to justify the amount originally claimed, I am satisfied that (1) the district judge's conclusion was not an abuse of discretion, (2) the amount awarded was fair compensation for the legal services rendered, and (3) the attorney was afforded adequate due process. I approve the district court's fee award.

## II.  Facts

Spokane attorney Gerald Smith ("Mr. Smith") was

appointed on May 14, 2008, to represent Ryan Jensen, a defendant charged with fraud, money laundering, and conspiracy in a white-collar criminal case in the Eastern District of Washington. *See United States v. Jensen*, No. 08-cr-0054-JLQ (E.D. Wash. indictment filed April 23, 2008). Following trial by jury—which had resulted in verdicts of guilty on all counts submitted for decision—but before termination of the case, Mr. Smith submitted his second-interim request for attorney's fees under the CJA. His worksheet claims that during the time between April 3, 2009, and July 11, 2009, he spent 45.1 hours in court either for hearings or in trial. He certifies that another 379.6 hours were dedicated to work outside of court preparing for trial, as well as researching and drafting a Rule 29 motion during trial that successfully resulted in the dismissal of certain counts against Jensen. Finally, he claims an additional $213.80 for photo copies. Only Mr. Smith's out-of-court hours claimed in his second-interim voucher are at issue here.[1]

Following procedures established by the CJA guidelines, Mr. Smith submitted his second CJA Form 20 for authorization of payment (the "voucher"), and a CJA Form 26 justifying the claim, requesting compensation totaling $46,930.80, well in excess of the statutory maximum of $8,600.[2] Guidelines for the Admin. of the Criminal Justice Act, Vol. 7, Guide to Judicial Policies & Procedures, app. A. On August 10, 2009, the Honorable Justin L. Quackenbush, Senior United States District Judge for the Eastern District of Washington and the presiding judge in the underlying matter, sent Mr. Smith a letter responding to his claim. The letter explained that, while Judge Quackenbush had previously categorized the case as "complex" for excess compensation purposes, 18 U.S.C. § 3006A(d)(3), he was hesitant to approve

---

[1]There is no question of the attorney's veracity with regard to the number of hours submitted for compensation.

[2]Mr. Smith had previously requested, and has already been compensated for, $31,662.90 on his first-interim CJA voucher submitted for his initial work on this case.

an additional $46,930.80, the full amount Mr. Smith was now requesting. He explained the court's concerns and ordered that Mr. Smith come to court for a hearing to determine the appropriateness of the fee request.

This on-the-record hearing took place in Judge Quackenbush's chambers on September 10, 2009. The transcript shows that Judge Quackenbush explained his reason for proposing to reduce the fee award based on the excessive out-of-court hours requested. Mr. Smith was given another chance at the conclusion of this hearing to both reflect upon the court's concerns and to voluntarily reduce his hours to only those necessary for the litigation. In a letter dated September 16, 2009, Mr. Smith nonetheless maintained that, in his judgment, each hour expended was necessary for effective representation of his client Ryan Jensen, and he refused to reduce his original claim by any amount.

Following the hearing and receipt of Mr. Smith's supplemental letter, Judge Quackenbush issued a memorandum order addressing Mr. Smith's fee request. The court reduced Mr. Smith's out-of-court hours from 379.6 hours to 200 hours. It explained that (1) Mr. Smith spent very little time arguing or presenting evidence during trial, and (2) the attorney for the co-defendant, Jimmy Jensen, had requested only 354.5 out-of-court hours for the totality of the litigation, compared to Mr. Smith's claimed total of 687.8 hours for out-of-court responsibilities.[3] Judge Quackenbush then approved Mr. Smith's second voucher in the reduced amount of $27,174.80, reflecting 45.1 hours in court, 200 hours out-of-court, and $213 in additional expenses.[4] Because the voucher request

---

[3]Mr. Smith's first-interim request, for which he was fully compensated, claimed another 308.2 out-of-court hours.

[4]While this resulted in a 42 percent reduction in the award for Mr. Smith's second-interim voucher, when considering the amount already awarded for the first-interim voucher, Judge Quackenbush reduced the attorney's fees for the totality of Mr. Smith's *Jensen* representation from May 14, 2008, through July 11, 2009, by 25 percent.

exceeded the statutory maximum, Judge Quackenbush forwarded the voucher to the Ninth Circuit for approval.

Mr. Smith then brought his objection to the reduction in fees to me in my capacity as Chief of the Northern Administrative Unit of the Ninth Circuit Court of Appeals, a delegate of the Chief Circuit Judge.[5] Mr. Smith first points to the complexity of the case and its thirty-two-count indictment. He also claims that he spent a great deal of time reviewing copious and disorganized discovery received from the United States Attorney and preparing for the cross-examination of witnesses. He believes that counsel for the co-defendant simply decided not to review most of the documents turned over in discovery, causing that counsel's hours to be substantially lower. Finally, he argues that the claimed hours were expended "providing more background to the events," deciding on trial strategy, determining which evidence to present, and preparing cross-examination. The hours, he says, were both necessary and properly expended.

## III.   Analysis

The question is whether all of Mr. Smith's claimed hours were both reasonably expended and, in the exercise of reasonable professional judgment, "necessary to provide fair compensation." 18 U.S.C. § 3006A(d)(3). The Criminal Justice Act provides that courts may "furnish[ ] representation for any person financially unable to obtain adequate representation." *Id.* at § 3006A(a). "Representation . . . shall include counsel and investigative, expert, and other services necessary

---

[5]The Ninth Circuit is organized for this purpose into three administrative units which oversee matters relating to the Criminal Justice Act. The three "delegates" under 18 U.S.C. § 3006A(d)(3) are designated "Chiefs" of the Northern, Middle, and Southern Administrative Units of the Ninth Circuit Court of Appeals. 9th Cir. Gen. Orders 1.11, 6.7 & 11.1(3) (2008). The Northern Administrative Unit encompasses the districts within the Pacific Northwest states of Alaska, Washington, Oregon, Idaho, and Montana.

for adequate representation." *Id.* Counsel are paid in accordance with the Act both for hours spent before the court and those "reasonably expended out of court." *Id.* at § 3006A(d)(1). The statute also sets forth the procedure for establishing hourly rates for attorney fees and places a presumptive cap on the maximum compensation normally available to counsel for representation in a particular case. *Id.* at § 3006A(d)(1) & (2). The rate set by the Judicial Conference of the United States is currently $110 per hour for counsel with a felony case maximum of $8,600 per representation. The statute states that the maximum permissible amount in a case may be waived for "extended or complex representation;" however this excess amount must be approved by the presiding judge and by either the chief judge of the circuit or a circuit judge to whom the chief judge has delegated his statutory responsibility. *Id.* at § 3006A(d)(3).

The Judicial Conference of the United States has approved official guidelines for the administration of the CJA and related statutes. These guidelines counsel judges and attorneys on compliance with the CJA, and include as appendices forms to aid in the submission of claims. They also provide a framework for determining whether claims for excess compensation should be granted.

The guidelines set forth a two-step test that should be followed by a presiding judge in determining whether approval of an excess voucher is warranted. First, as required by the statute, the judge must find that the case is either "extended" or "complex." 18 U.S.C. § 3006A(d)(3). Mr. Smith argues that this case was "complex," a term which applies "[i]f the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case." GUIDELINES FOR THE ADMIN. OF THE CRIMINAL JUSTICE ACT, ¶ 2.22(B)(3). Judge Quackenbush previously categorized the case as "complex" as contemplated within the meaning of the guidelines. The second step requires that the presiding judge "determine

if excess payment is necessary to provide fair compensation." *Id.* The guidelines state that, *inter alia*, the following criteria may prove helpful in making this determination: the "manner in which duties were performed; knowledge, skill, efficiency, professionalism, and judgment required of and used by counsel; nature of counsel's practice and injury thereto; any extraordinary pressure of time or other factors under which services were rendered; and any other circumstances relevant and material to a determination of a fair and reasonable fee." *Id.* Counsel is required to prepare a supporting explanation if an excess claim is made. *Id.* at ¶ 2.22(C)(2). The explanation must be detailed, justifying why excess payment is required for fair compensation, *id.*, and may be made on the CJA Form 26, or by a declaration, letter, or memorandum from counsel accompanying the CJA voucher.

After reviewing the requested hours and accompanying memorandum, and in light of Mr. Smith's performance before him during trial and throughout pre-trial proceedings, Judge Quackenbush concluded that not all of the hours expended were essential for the litigation. Specifically, the judge found that a substantial amount of the out-of-court preparation was unnecessary, given Mr. Smith's limited reliance on that preparation as demonstrated by counsel's performance at trial.

The guidelines also establish what process is due before a claim may be adjusted. If the presiding judge concludes that a reduction in claimed compensation is necessary, that judge should provide appointed counsel with (1) "prior notice of the proposed reduction with a brief statement of the reason(s) for it," and (2) "an opportunity to address the matter." *Id.* at ¶ 2.22(E). Because he anticipated reducing the amount claimed in the attorney's CJA voucher, Judge Quackenbush notified Mr. Smith in writing of his concerns and ordered that the attorney be given the opportunity to be heard before a final decision was rendered. At that hearing, the judge explained his reservations against approving the full amount sought, and he permitted Mr. Smith to explain and justify his allocation of

pre-trial preparation time. Unsatisfied with both Mr. Smith's response and his unwillingness to consider any reduction in his requested hours—i.e., refusing the court's suggestion that he limit them only to those hours necessary for fair compensation in view of how the case was handled by counsel—Judge Quackenbush then cut the number of out-of-court hours requested in the second-interim voucher by about 48 percent.

There is no other fee structure in federal law that parallels the CJA. Statutes like the Equal Access to Justice Act, 28 U.S.C. § 2412, and 42 U.S.C. § 1988—the fee statute for compensating prevailing plaintiffs in civil rights cases—are different. First, because they award fees to the "prevailing party," both require termination of the litigation prior to a fee determination. This permits the presiding judge to make a decision regarding fees at the end of the case and, if sought, a traditional appeal may follow. Second, the CJA imposes both lower-than-market-rate hourly fees and a statutory fee maximum award applicable in a typical case. Neither of these comparable statutes, or any other under federal law, imposes any such limitation. Finally, neither statute sets forth a review process separate from the traditional right of appeal. However, under the CJA, Congress has provided for a limited two-layer review process, where all excess fees must be approved both by the presiding judge and by the chief circuit judge or his delegate. Congress established this process by statute and it is akin to an administrative decision, providing no right of formal appeal to the United States courts of appeal. *See In re Baker*, 693 F.2d 925, 927 (9th Cir. 1982) ("[T]he district judge's certification of attorneys' fees is an administrative act, and is consequently not one of the 'final decisions' rendered appealable by 28 U.S.C. § 1291. We therefore lack power to review the certification by appeal.") (internal citations and footnote omitted).

The procedure set forth by the CJA makes sense, especially in complex cases where interim vouchers are regularly submitted, sometimes on a monthly basis, as the litigation pro-

ceeds. Permitting exhaustive appellate review each time there is a reduction ordered in a CJA voucher would spawn multiple collateral appeals with no real gain. The present system judiciously requires two Article III judges to review and certify the amounts reasonably expended as fair compensation for indigent representation under the Act.

For this reason our circuit has very little precedent regarding the CJA compensation system. But our treatment of fee reductions in cases where fees may be challenged on appeal provides some guidance. Broadly speaking, we have said that "[t]he district court has a great deal of discretion in determining the reasonableness of the fee and, as a general rule, we defer to its determination, including its decision regarding the reasonableness of the hours claimed." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992) (citations omitted). Even though such determinations are generally given substantial deference, "the district court is required to articulate . . . the reasons for its findings regarding the propriety of the hours claimed or for any adjustments it makes . . . to the . . . claimed hours." *Id.*

"In making [an] award, the district court must strike a balance between granting sufficient fees to attract qualified counsel . . . , and avoiding a windfall to counsel." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (internal citations omitted). Traditionally, "[w]e review the district court's calculation of the reasonable hours . . . for abuse of discretion." *Id.* (citing *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 977-78 (9th Cir. 2008)). The district court is required to explain how it made its fee determination, and while that "explanation need not be elaborate, . . . it must be comprehensible." *Id.*; *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (stating that the court's explanation may be "concise," but must also be "clear").

"Despite the 'concise but clear' requirement, in cases where a voluminous fee application is filed in exercising its

billing judgment the district court is not required to set forth an hour-by-hour analysis of the fee request." *Gates*, 987 F.2d at 1399 (quoting *Hensley*, 461 U.S. at 437). We have recognized that in such cases, "the district court has the authority to make across-the-board percentage cuts . . . in the number of hours claimed . . . as a practical means of trimming the fat from a fee application." *Id.* (internal quotation marks and citation omitted). However, "[i]rrespective of its obvious utility, the percentage or, 'meat-axe approach,' nonetheless has been criticized when employed in cases where the fee applications at issue involved substantial amounts of money and where district courts failed adequately to articulate their reasons for selecting specific percentage deductions." *Id.* (citations omitted). Though a small reduction of fees necessitates only "cursory explanation," anything more disparate requires "a more specific articulation of the court's reasoning." *Moreno*, 534 F.3d at 1111. Finally, and most importantly to the instant case, "the district court can impose a small reduction, no greater than 10-percent—a 'haircut'—based on its exercise of discretion," but anything more substantial requires clear explanation. *Id.* at 1112.

Judge Quackenbush ultimately cut almost half of Mr. Smith's requested out-of-court hours from the second-interim voucher. This is certainly more than a "haircut." However, the experienced district judge provided not just lengthy, but also crystal clear, explanations for this deduction in a letter, a six-page order, and orally on the record when examining the propriety of the fees sought. The court found that Mr. Smith spent very little time cross-examining witnesses during the one-week trial, and in doing so introduced only two trial exhibits. His opening statement was terse, consuming only ten minutes, and he called no witnesses of his own. The court concluded that Mr. Smith had very little to show for the nearly 700 hours of out-of-court preparation sought in the initial and second interim vouchers. The district judge cited his experience in presiding over hundreds of trials and administering thousands of CJA vouchers, and compared Mr. Smith's

trial performance with that of his co-counsel in the *Jensen* case and with other counsel in similar cases. Judge Quackenbush found that Mr. Smith's performance in the courtroom lacked substantiated reliance on his out-of-court preparation.

Deference must be given to the presiding judge who watched the progress of this litigation from the beginning because that judge is most familiar with the attorney's actual performance. *Hensley*, 461 U.S. at 437 ("[T]he district court has discretion in determining the amount of a fee award [due to its] superior understanding of the litigation."); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986) ("The district court is in the best position to determine in the first instance the number of hours reasonably expended in furtherance of the successful aspects of a litigation and the amount which would reasonably compensate the attorney."). It is very difficult to review a cold record and displace the view of the presiding judge who is best able to assess the reasonableness of a fee request in light of the attorney's actual conduct in the courtroom. This is especially true in the instant case, where Judge Quackenbush closely observed Mr. Smith's performance both in hearings and throughout the week-long trial.

Furthermore, the purpose of the Act is not to compensate counsel with fees rivaling those available to attorneys representing nonindigent clients. *See generally United States v. Dillon*, 346 F.2d 633, 635 (9th Cir. 1965) ("[T]he obligation of the legal profession to serve indigents on court order is an ancient and established tradition, and . . . appointed counsel have generally been compensated, if at all, only by statutory fees which would be inadequate under just compensation principles, and which are usually payable only in limited types of cases."). Instead, Congress enacted the CJA to both "assure adequate representation in the Federal courts of accused persons with insufficient means," and "afford[ ] reasonable compensation to counsel who are assigned." S. REP. No. 88-346, at 1 (1963).

The question thus becomes not "what hours were *actually* expended," but "what hours were *reasonably* expended completing work necessary for adequate representation." *See* 18 U.S.C. § 3006A(a). Mr. Smith claims that both the actual and necessary amount of out-of-court hours expended during the three-month period was 379.6. Judge Quackenbush found that, while Mr. Smith had actually worked the hours requested, a reasonable number of out-of-court hours warranting compensation was only 200. Considering the voluminous, on-going discovery in this white-collar criminal case, I am sympathetic to Mr. Smith's position that he needed substantial time to review and organize discovery due to the form in which it was received. Until the attorney reviews the discovery, one cannot say whether it may prove useful or not.

However, I cannot say that Judge Quackenbush abused his discretion when he provided ample notification to Mr. Smith that he was considering awarding a fee less than that requested, explained why he was concerned with the out-of-court time charged to the case, and afforded Mr. Smith an on-the-record hearing in chambers to justify the claim. When the attorney declined to reduce the claim by any amount, the court also issued a detailed written decision explaining the considerations and rationale for the reduction imposed.

## IV.    Conclusion

There was no abuse of discretion in the ultimate fee awarded on this voucher. The factual findings underlying the district court's rationale for a substantial reduction in out-of-court hours are not clearly erroneous. Therefore, I approve Judge Quackenbush's reduced award of fees to Mr. Smith as fair compensation for the representation he afforded his client during the period covered by the second-interim voucher.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2009 Thomson Reuters/West.