FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| LADONNA E. SEACHRIS, *Petitioner*, v. BRADY-HAMILTON STEVEDORE COMPANY; SAIF CORPORATION; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, *Respondents.* | No. 18-71807 BRB No. 17-0581 OPINION |

On Petition for Review of an Order of the
Benefits Review Board

Argued and Submitted September 3, 2020
Seattle, Washington

Filed April 19, 2021

Before: A. Wallace Tashima, Jay S. Bybee, and
Daniel P. Collins, Circuit Judges.

Opinion by Judge Tashima

# SUMMARY[*]

## Longshore Act / Attorney's Fees

The panel granted a petition for review of a decision of the Benefits Review Board ("BRB") that upheld an administrative law judge ("ALJ")'s award of attorney's fees and costs under the Longshore and Harbor Workers' Compensation Act.

Petitioner filed a claim for death benefits under the Longshore Act, and was represented in the proceedings by attorney Charles Robinowitz. An ALJ granted petitioner's claim for benefits, and Robinowitz requested "a reasonable attorney's fee" under 33 U.S.C. § 928(a). Robinowitz sought an hourly rate of $450, but the BRB awarded him a rate of $349.85 per hour.

The panel held that the ALJ erred by concluding that Robinowitz failed to satisfy his initial burden of producing evidence of a prevailing market rate for his services. Robinowitz presented substantial evidence that his requested rate of $450 an hour, in 2016, was in line with the prevailing rate in the community for similar services by lawyers of comparable skill, experience, and reputation. The panel concluded that the ALJ's contrary conclusion was not supported by substantial evidence, and the ALJ's concerns at most went to the weight of the evidence, not its sufficiency.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the ALJ erred by rejecting Robinowitz's evidence of prevailing market rates as outdated because the conclusion was not supported by substantial evidence. Evidence of historical market conditions is relevant evidence of current market conditions, and reliance on such evidence is particularly appropriate when it is the most current information available.

The panel held that the ALJ erred by rejecting Robinowitz's evidence of commercial litigation rates. First, the ALJ appeared to have conflated commercial litigation and complex litigation. Second, there was no discernable rational basis for the ALJ's selective concerns about the differences between formal and informal litigation.

The panel held that the ALJ erred by rejecting Robinowitz's evidence from the 2012 Oregon State Bar Survey of hourly rates. The panel held further that the ALJ's decision to place Robinowitz within the 75th percentile of attorneys in the plaintiff civil litigation and general practice areas under the 2012 Oregon State Bar Survey must be vacated because that decision appeared to have been influenced by an improper factor, namely, the ALJ's unwarranted irritation with a brief that Robinowitz filed on remand from this court.

The panel held that the ALJ's decision to include the "general" practice area in her analysis was not supported by substantial evidence. There was abundant evidence in the record to show that Robinowitz was a specialist, with significant experience and success in handling Longshore Act cases.

The panel concluded that the ALJ and the BRB committed legal error in determining the hourly rate, and that the ALJ's determination of the hourly rate was not supported by substantial evidence. The panel granted the petition for review on this issue, and remanded for further proceedings.

The panel held that the ALJ erred by awarding Robinowitz's paralegal a rate of $150 per hour rather than $165 per hour as requested.  First, the ALJ erred by relying almost exclusively on the rates awarded by other ALJs. Second, the ALJ's reliance on the district court's reliance on the district court's awards was flawed because the decisions upon which the ALJ relied set paralegal rates based on survey data pertaining to the western United States as a whole, rather than the relevant Portland community.  Robinowitz provided the only record evidence of market rates for Portland paralegals.  The panel granted the petition for review on this issue, and directed that the BRB on remand award Robinowitz's paralegal a rate of $165 per hour.

The ALJ on remand ordered petitioner to file a supplemental brief addressing matters that this court had already decided.  Rather than addressing the issues called for in the ALJ's supplemental briefing order, Robinowitz used the brief to take issue with the ALJ's interpretation of this court's decision.  The panel held that the ALJ improperly reduced Robinowitz's fees for preparing the supplemental brief.  The panel held that the ALJ's anger over Robinowitz's position on remand permeated the entire fee order, and it appeared that the ALJ improperly reduced Robinowitz's fees for preparing the supplemental brief as a sanction.  The panel granted the petition for review on this issue.

The panel held that the ALJ and the BRB erred by holding that the Longshore Act did not permit an award of interest on costs to account for delay in payment. The panel granted the petition for review on this issue, and directed the BRB on remand to determine whether an award of interest on costs was appropriate because of the exceptionally protracted period that this case has been pending.

Finally, the panel held that the tone of the ALJ's decision and the manner in which the ALJ evaluated the evidence suggested that the ALJ may not be able to provide Robinowitz with a fair and impartial hearing on remand. Accordingly, the panel *sua sponte* directed that the BRB reassign this matter to a different ALJ on remand to avoid the appearance of impropriety.

## COUNSEL

Joshua T. Gillelan II (argued), Longshore Claimants' National Law Center, Mitchellville, Maryland; Charles Robinowitz, Portland, Oregon; for Petitioner.

Michael J. Godfrey (argued), Sather Byerly & Holloway LLP, Portland, Oregon, for Respondent.

## OPINION

TASHIMA, Circuit Judge:

This is Ladonna Seachris' ("Seachris") petition to review a decision of the Benefits Review Board ("BRB") upholding a decision of an administrative law judge ("ALJ") awarding Seachris attorney's fees and costs under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–50.  We hold that aspects of the decisions under review constitute legal error and are not supported by substantial evidence.  Specifically, we hold that the ALJ improperly rejected the fee applicant's evidence of prevailing market rates, erroneously established a paralegal's hourly rate by reference to other ALJ decisions rather than evidence of prevailing market rates in the relevant community, and improperly denied fees for hours reasonably expended.  We further hold that the ALJ and the BRB erred in concluding that the LHWCA does not authorize an award of interest on costs.  Accordingly, we grant the petition for review and remand to the BRB for further proceedings.  We also order the BRB to reassign this matter to a different ALJ on remand.

## I.  BACKGROUND

### A.  Robinowitz's Fee Application

In 2006, Seachris, widow of Cloyd E. Seachris,[1] filed a claim for death benefits under the LHWCA.  Seachris was represented in the proceedings by attorney Charles Robinowitz.  The proceedings were heard by an ALJ in the U.S. Department of Labor's Office of Administrative Law

---

[1] Cloyd Seachris died on October 10, 2005.

Judges ("OALJ").  After the ALJ denied the claim and the BRB affirmed, we granted a petition for review and remanded. *Seachris v. Dir., OWCP*, 538 F. App'x 813 (9th Cir. 2013).  On remand, in April 2016, the ALJ granted Seachris' claim for benefits.

Seachris' successful prosecution of her claim entitled Robinowitz to an award of "a reasonable attorney's fee." 33 U.S.C. § 928(a).[2]  Accordingly, in May 2016, ten years after the claim was first filed, Robinowitz filed a Declaration of Attorney Fees and Costs seeking an award of $50,616.75 in attorney's fees and $5,413.95 in costs for work performed between 2007 and 2016.

Robinowitz requested an hourly rate of $450 for his own legal services.  In support of this rate, Robinowitz's

---

[2] Section 928(a) states:

> If the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer or carrier in an amount approved by the deputy commissioner, Board, or court, as the case may be, which shall be paid directly by the employer or carrier to the attorney for the claimant in a lump sum after the compensation order becomes final.

33 U.S.C. § 928(a).

declaration stated that he had over 45 years' experience as an attorney; that his "legal practice emphasizes serious tort and wrongful death claims and workers' compensation claims under the [LHWCA]"; that he has "tried over 200 jury trials, [tried] over 350 court trials, and . . . argued over 150 appeals"; that he has "instructed at [Continuing Legal Education] programs on trial practice and the [LHWCA]"; and that "other lawyers regularly consult [him] for advice on issues under the [LHWCA] as well as on trial practice in civil cases." Robinowitz stated that he has handled "commercial litigation cases," including an Employee Retirement Income Security Act ("ERISA") case and "a large consumer fraud case with over 140 plaintiffs." He further stated that "Longshore cases involve very similar services to these cases. They involve careful review of documents, meeting[] frequently with both expert and lay witnesses, detailed calculation of losses and specific legal research, which is typical trial preparation."

Robinowitz also submitted a 2009 declaration from Portland practitioner Phil Goldsmith. Goldsmith stated that he specializes in class action and financial institution litigation, that most of his compensation comes from court-awarded attorney's fees, that he carefully monitors evidence of local market rates, that he periodically testifies as an expert witness on attorney's fees, and that he has known Robinowitz for many years. Goldsmith stated that "the $400 hourly rate requested" by Robinowitz at that time was "slightly below market rates in Portland for lawyers of comparable skill, experience and reputation." Goldsmith relied in part on a survey of commercial litigation rates compiled by Serena Morones ("Morones Survey") in 2008. According to the Morones Survey, "the average rate [as of January 1, 2008] for lawyers with experience comparable to Mr. Robinowitz was

$446 an hour." Goldsmith also noted that "attorneys that specialize in a specific niche . . . charge a higher rate," and that Robinowitz had "substantial expertise" and experience in LHWCA cases.

Robinowitz also submitted a 2009 affidavit from David Markowitz, another Portland practitioner. Markowitz, the state chairperson of the American College of Trial Lawyers, recounted his experience on the subject of attorney's fees, including his extensive work as an expert witness, arbitrator, and lecturer. Markowitz stated that Robinowitz had a reputation as "a very experienced and accomplished litigator who is able to provide highly qualified representation in [LHWCA] cases as well as a wide variety of business and tort litigation." Markowitz opined that Robinowitz's "attorney fee rate should be set at or above the average rate for attorneys with 30 or more years experience as shown in the Morones Survey of Commercial Litigation Rates," equating to a rate of $404 per hour in 2009. He opined that

> these amounts reflect the prevailing market rates in Oregon for an attorney of Mr. Robinowitz's experience and reputation and are rates commensurate with those which he could obtain by taking other types of cases which he is qualified to handle. I have observed from my work in over 100 attorney fee matters as an expert, arbitrator, mediator and attorney in Oregon that these rates are in line with those prevailing in Oregon for similar services by lawyers of reasonably comparable experience and reputation.

Robinowitz also submitted the 2010 iteration of the Morones Survey. This survey, which includes information from Portland law firms having more than five attorneys specializing in commercial litigation, stated that attorneys with 30 or more years of experience charged an average of $431 per hour as of January 2010.

Robinowitz also submitted portions of the Oregon State Bar 2012 Economic Survey ("2012 OSB Survey"). For Portland attorneys with over 30 years of experience, the 2012 OSB Survey reported a median rate of $350 per hour. For attorneys in the 75th percentile, the rate was $400 per hour; for those in the 95th percentile, it was $500 per hour.

Robinowitz also submitted a 2014 decision by the Ninth Circuit Appellate Commissioner awarding him fees at a rate of $425 per hour for his services in this court. *See Petitt v. Sause Brothers*, No. 12-70740 (9th Cir. Sept. 24, 2014).[3] The Appellate Commissioner looked to the 2012 OSB Survey, which, as noted, reported an hourly rate of $400 for the top 25 percent of Portland attorneys with more than 30 years' experience. The Appellate Commissioner rejected the respondents' contention that the court should instead rely on the OSB Survey's rates for specific practice areas encompassing "Portland plaintiff-side civil litigators.

---

[3] The Appellate Commissioner issued the *Petitt* decision pursuant to Ninth Circuit Rule 39-1.9. Such decisions do not constitute circuit precedent but may be treated as persuasive authority. *See Orn v. Astrue*, 511 F.3d 1217, 1220 (9th Cir. 2008) (noting the Appellate Commissioner's "substantial experience and expertise in ruling on appellate fee requests").

Robinowitz also submitted a 2014 decision by the BRB awarding him a rate of $413 per hour for work performed in 2013 and $420 per hour for work performed in 2014. *Petitt v. Sause Brothers*, No. 11-0351 (Ben. Rev. Bd. Apr. 29, 2014).[4]  The BRB relied on the 2012 OSB Survey.  Rather than looking at the survey's rates for Portland attorneys with at least 30 years' experience, however, the BRB looked at the survey's rates for Portland attorneys practicing in two of the survey's 14 practice areas:  plaintiff civil litigation personal injury and plaintiff civil litigation non-personal injury.  The BRB placed Robinowitz in the top five percent of lawyers practicing in these areas (the 95th percentile), averaged the rates applicable to these two practice areas, and adjusted the resulting rates for inflation, producing an hourly rate of $413 for work performed in 2013.  The BRB adopted the 95th percentile rate because, as the BRB had noted in its prior decision in *Christensen v. Stevedore Services of America*, No. 03-0302, 2010 WL 2256182 (Ben. Rev. Bd. May 13, 2010), Robinowitz had "40 years of experience and demonstrated skill in the successful representation of many claimants before the Board and the Ninth Circuit."

Robinowitz's fee declaration requested an hourly rate of $165 for a paralegal in his office with over 20 years' experience.  In support of this rate, Robinowitz relied on the 2009 Goldsmith declaration, which opined that the $150 hourly rate Robinowitz requested at that time was "consistent with the rates prevailing in the community."  Goldsmith relied on the 2008 Morones Survey of Portland commercial litigation firms, which stated that the average rate for

---

[4] *See also Petitt v. Sause Brothers*, No. 13-0330, 2014 WL 993104, at *4 (Ben. Rev. Bd. Feb. 26, 2014) (awarding Robinowitz a rate of $413 per hour for work performed in 2013).

paralegals at that time was $154 per hour. Robinowitz also relied on the Ninth Circuit Appellate Commissioner's 2014 decision in *Petitt*, which awarded Robinowitz's paralegal a rate of $165 an hour for work performed in 2013. The Appellate Commissioner concluded that this rate was "in line with currently prevailing market rates for Portland paralegal work."

Finally, Robinowitz requested an award of interest on costs to account for delay in payment, noting that Seachris had incurred the litigation expenses in 2011, five years before Robinowitz filed his request for fees and costs.

## B. Respondents' Objections

In their objections to Robinowitz's fee declaration, Respondents argued that Robinowitz should be awarded fees at a rate of $358 per hour rather than the $450 he requested. Respondents derived this figure from the practice-area chart in the 2012 OSB Survey rather than the years-of-experience chart. Specifically, Respondents selected the rates applicable to Portland attorneys practicing in two of the survey's 14 practice areas—plaintiff civil litigation personal injury and plaintiff civil litigation non-personal injury. For Portland attorneys in the 75th percentile, the 2012 OSB Survey's rates for these practice areas were $350 and $300 respectively. Respondents averaged these two rates, adjusted the 2011 rates for inflation, and arrived at a proposed rate of $358 per hour.

Respondents acknowledged the Ninth Circuit Appellate Commissioner and BRB decisions awarding Robinowitz rates of $425 and $420 per hour. They argued, however, that these rates should not control, because "appellate practice involves

a different set of skills than is required to practice before the OALJ."

Relying on *Christensen v. Stevedoring Services of America*, No. 03-0302, 2010 WL 2256182 (Ben. Rev. Bd. May 13, 2010), Respondents also contended that Robinowitz's other evidence of prevailing market rates—the Goldsmith declaration, the Markowitz affidavit, and the Morones Survey—were "not relevant," because "services provided by attorneys with a business litigation practice" are not "comparable" to services performed under the LHWCA.

Finally, Respondents argued that Robinowitz's paralegal should be awarded a rate of $150 per hour rather than the $165 requested. They argued that the Morones Survey was inadequate to support Robinowitz's requested rate because it was "applicable to business litigation." They further argued that, "[i]n other fee decisions involving Mr. Robinowitz, with similar documents and statements offered in support of the requested rate, the paralegal was often awarded $150.00.

## C.  The ALJ's Fee Decision

The ALJ addressed Robinowitz's request for attorney's fees and costs in a January 2017 order. The ALJ awarded Robinowitz $36,560.50 in attorney's fees and awarded Seachris $5,413.95 in costs.

The ALJ devoted the majority of her decision to the question of Robinowitz's hourly rate. As a threshold matter, the ALJ concluded that Robinowitz had failed to satisfy his initial burden of producing evidence of a prevailing market rate for his services. First, the ALJ declined to give any weight to the Goldsmith declaration, the Markowitz affidavit,

and the Morones Survey because (1) the information contained in this evidence was "too old to be very useful" and "simply too dated to be convincing," and (2) the information pertained to rates charged by lawyers handling commercial litigation, which "involve[s] different skills and expertise" than LHWCA work.

Second, the ALJ declined to give any weight to the portion of the 2012 OSB Survey that Robinowitz submitted, faulting him for submitting only part of the report and for relying on the rates for all Portland practitioners, based on years of experience, rather than relying on the rates charged by Portland attorneys in individual practice areas involving "the sort of trial-level skills needed in Longshore practice."

Third, the ALJ declined to give weight to the BRB and Ninth Circuit Appellate Commissioner's decisions awarding Robinowitz rates of $420 and $425 respectively for appellate work. Echoing Respondents, the ALJ reasoned that this evidence was "not convincing," because "[a]ppellate-level Longshore Act work . . . requires skills and expertise that are different than those required to effectively litigate at OALJ."

In sum, the ALJ rejected every piece of evidence offered by Robinowitz in support of his requested hourly rate. Having done so, the ALJ concluded that Robinowitz "has failed to carry his burden of establishing entitlement to the rates claimed in this case." The ALJ then proceeded to determine a reasonable hourly rate independently of the evidence offered by Robinowitz.

In doing so, the ALJ relied almost exclusively on the 2012 OSB Survey. But rather than relying on the OSB Survey rates based on years of experience, as Robinowitz had

proposed, the ALJ relied on the survey's rates applicable to particular practice areas that the ALJ deemed appropriate comparators to LHWCA work.  Specifically, the ALJ included three of the survey's 14 practice areas in her analysis:  plaintiff civil litigation personal injury, plaintiff civil litigation non-personal injury, and general practice—the practice area that applies to attorneys who devote less than 50 percent of their time to any one practice area.  The ALJ calculated a weighted average of these three practice areas, concluded that Robinowitz fell within the 75th percentile (not the 95th percentile, as Robinowitz advocated), and adjusted the resulting rate to account for inflation, producing a rate of $341.92 per hour—far less than the $450 rate proposed by Robinowitz and less even than the $358 rate proposed by Respondents.

The ALJ awarded Robinowitz's paralegal a rate of $150. The ALJ based this rate on other ALJ decisions and federal district court decisions in the District of Oregon.

The ALJ also rejected Robinowitz's request for an award of interest on costs.  Citing *Hobbs v. Director, Office of Workers Compensation Programs*, 820 F.2d 1528 (9th Cir. 1987), *abrogated on other grounds as stated in Anderson v. Dir., OWCP*, 91 F.3d 1322, 1324 (9th Cir. 1996), the ALJ ruled that "interest may not be awarded on an award of . . . costs under the Longshore Act."

## D.  The BRB's Decision

On appeal, the BRB concluded that the ALJ had "addressed, and rationally rejected, the evidence submitted by counsel in support of his requested hourly rate of $450."  In particular, the BRB concluded that the ALJ properly "rejected

the Goldsmith declaration, the Markowitz declaration, and the Morones Survey because they are outdated and refer to commercial/business litigation, which the administrative law judge found is not work similar to that practiced by counsel." The BRB also concluded that the "hourly rate awarded represents a reasonable weighted average of the rates established by the 2012 [OSB Survey] in the three practice areas the administrative law judge rationally found to be relevant." After correcting an error by the ALJ in adjusting the 2012 OSB Survey rates for inflation, the BRB awarded Robinowitz a rate of $349.85 per hour. The BRB also agreed with the ALJ that the LHWCA "does not permit the paying of interest on costs" and sustained the other challenged aspects of the ALJ's fee order.

Seachris timely petitioned for review.

## II.  STANDARD OF REVIEW

"In LHWCA proceedings, the [Benefits Review] Board must accept the ALJ's findings unless they are contrary to law, irrational, or unsupported by substantial evidence." *Port of Portland v. Dir., OWCP*, 932 F.2d 836, 838 (9th Cir. 1991). "We review the Board's decisions for errors of law and adherence to the substantial evidence standard." *Id.* Accordingly, "[w]e independently evaluate the evidence in the administrative record to ensure the BRB adhered to the correct standard of review." *Shirrod v. Dir., OWCP*, 809 F.3d 1082, 1086 (9th Cir. 2015). "Because the Board is not a policymaking body, we accord no special deference to its interpretation of the LHWCA." *Port of Portland*, 932 F.2d at 838.

## III.  DISCUSSION

### A.  Robinowitz's Hourly Rate

We begin by reviewing the ALJ's and BRB's decisions regarding Robinowitz's hourly rate.

"The 'lodestar method' is the fundamental starting point in determining a 'reasonable attorney's fee,' and this is true as to computation of attorney's fees under § 928(a) of the LHWCA."  *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 (9th Cir. 2009) (citation omitted) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). "This method 'requires the court to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate.'"  *Id.* at 1053 n.4 (quoting *Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 955 (9th Cir. 2007)).

"'[A] reasonable attorney's fee' is one that is 'adequate to attract competent counsel.'"  *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (quoting S. Rep. No. 94-1011, at 6 (1976)).  "[I]t is necessary," therefore, "that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases," *Christensen*, 557 F.3d at 1053 (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008)), and that fees be "sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case," *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

To ensure adequate compensation, hourly rates "are to be calculated according to the prevailing market rates in the relevant community," *Blum*, 465 U.S. at 895, meaning the "rates charged to clients of private law firms," *Miele v. N.Y.*

*State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987). Of course, "there is no private market for attorney's fees under the LHWCA." *Christensen*, 557 F.3d at 1053. LHWCA attorneys do not, and are not permitted to, enter into private fee agreements with their clients. *Id.* (citing 33 U.S.C. § 928(e)).

Hourly rates under the LHWCA, therefore, must be based on the rates charged to clients of private law firms for *similar* work. As *Blum* explains, the rates awarded must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." 465 U.S. at 896 n.11. This ensures that LHWCA attorneys receive the same compensation as their private-practice counterparts. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286 (1989) ("A reasonable attorney's fee under § 1988 is . . . comparable to what 'is traditional with attorneys compensated by a fee-paying client.'" (quoting S. Rep. No. 94-1011, at 6 (1976))).

"The evidentiary burdens governing fee motions are well established." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1105 (9th Cir. 2015).

> The applicant has an initial burden of production, under which it must "produce satisfactory evidence" establishing the reasonableness of the requested fee. This evidence must include proof of market rates in the relevant community (often in the form of affidavits from practitioners), and detailed documentation of the hours worked. If the applicant discharges its legal obligation as to the burden of production, the court then

> proceeds to a factual determination as to whether the requested fee is reasonable. In the usual case, that factual determination will involve considering both the proponent's evidence and evidence submitted by the fee opponent "challenging the accuracy and reasonableness of the facts asserted by the prevailing party."

*Id.* (citations omitted) (first quoting *Blum*, 465 U.S. at 896 n.11, and then quoting *Camacho*, 523 F.3d at 980).

We conclude that the ALJ erred in applying these principles.

### 1. The ALJ erred by concluding that Robinowitz failed to satisfy his initial burden of production

The ALJ concluded that Robinowitz failed to satisfy his initial burden of production. This conclusion is not supported by substantial evidence.

Robinowitz presented substantial evidence that his requested rate of $450 an hour, in 2016, was "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 896 n.11. This evidence included, among other things: affidavits from two experienced practitioners supporting rates of $400 and $404 respectively in 2009; the 2012 OSB Survey reporting that Portland attorneys with over 30 years' experience billed between $350 (median) and $400 (75th percentile) in 2011; a 2014 Ninth Circuit Appellate Commissioner order awarding Robinowitz $425 for work performed in 2012 and 2013; and

a 2014 BRB decision awarding Robinowitz $413 for work performed in 2013 and $420 for work performed in 2014.

This evidence was more than sufficient to carry Robinowitz's initial burden of production. The ALJ's contrary conclusion is not supported by substantial evidence. The ALJ's concerns at most go to the weight of the evidence, not its sufficiency.

### 2. The ALJ erred by rejecting Robinowitz's evidence of prevailing market rates as outdated

The ALJ rejected the Goldsmith declaration, the Markowitz affidavit, and the Morones Survey as "too old to be very useful" and "simply too dated to be convincing." We hold that this conclusion is not supported by substantial evidence.

It is true, of course, that fee awards must be "based on current rather than merely historical market conditions." *Christensen*, 557 F.3d at 1055. In *Bell v. Clackamas County*, 341 F.3d 858, 869 (9th Cir. 2003), for example, we held that "it was an abuse of discretion . . . to apply market rates in effect more than two years *before* the work was performed." And it is also true that the parties should provide, and the adjudicator should rely on, the most current information available.[5] Evidence of historical market conditions, however, is nevertheless relevant evidence of current market conditions, and reliance on evidence of historical market conditions is particularly appropriate when it is the most

---

[5] Robinowitz would be well advised, in future cases, to exercise more care to offer current practitioner fee data.

current information available.  The ALJ therefore erred by rejecting Robinowitz's evidence on this basis.

ALJs, moreover, must treat the parties' evidence evenhandedly.  Here, both parties, and the ALJ herself, relied on dated evidence.  Robinowitz relied on 2009 declarations from Goldsmith and Markowitz, the 2010 Morones Survey, and the 2012 Oregon State Bar Survey, which the ALJ criticized as incomplete.  Respondents, in turn, relied on excerpts of the 2012 Oregon State Bar Survey.  The ALJ rejected Robinowitz's evidence as "too dated to be convincing") but ultimately relied on the very same 2012 Oregon State Bar Survey as the linchpin of her hourly rate determination.  By the time the ALJ issued her fee decision in January 2017, the 2011 rates in the 2012 OSB Survey were six years old.  The ALJ nevertheless relied on the survey by adjusting the 2011 data for inflation—appropriately so.  But the ALJ declined to make similar adjustments to Robinowitz's evidence.  We see no reason why she should not have taken the same approach to Robinowitz's evidence, and it was error not to do so.

### 3.  The ALJ erred by rejecting Robinowitz's evidence of commercial litigation rates

The ALJ also rejected the Goldsmith, Markowitz, and Morones evidence because they concern rates charged by attorneys handling commercial litigation.  The explanations the ALJ and the BRB offered for rejecting this evidence are unsupported.

The ALJ, for instance, plainly erred by rejecting this evidence on the ground that "commercial litigation . . . is not the market that Petitioner operates in."  The question is not

whether Robinowitz qualifies as a commercial litigator; it is whether the rates charged by commercial litigators are relevant comparators—*i.e.*, whether the rates involve "similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 896 n.11.

Turning to that question, the ALJ concluded that commercial litigation is *not* similar to the kind of LHWCA work performed in this case:

> Longshore trial work is relatively straightforward litigation. Effective practice requires familiarity with the peculiar contours of the Act and an ability to understand and work with medical evidence. The process is informal. There are no jury trials. The rules of evidence are considerably relaxed. The rules of procedure are simple, and enforcement is forgiving. Presumptions simplify the case and assist claimants greatly. Hearings, when necessary, are usually short. Never are there multiple claimants joined in the same claim for adjudication. There may be multiple employers and carriers, but the interests of the respondents are usually adverse. Except in unusual cases, no showing of intent, negligence, or culpability is required.

> The sorts of skills and experience possessed by attorneys in Longshore work are not the same as the sorts of skills and experience necessary to engage in mergers and acquisitions, intellectual property law, or

> complex and class action litigation.
> Accordingly, the market rates for such legal
> work are not very informative as to a proxy
> market for Longshore work.

The ALJ's analysis is valid up to a point.  There *are* differences between commercial litigation and LHWCA work.  And it *is* reasonable, in identifying appropriate comparators, to distinguish between complex and non-complex litigation.  *E.g.*, *DL v. District of Columbia*, 924 F.3d 585, 594 (D.C. Cir. 2019).  As we explained in *Davis v. City & County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992), *opinion vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993), "[b]oth the Supreme Court and this court have made clear that [reasonable hourly] rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of *similar complexity*."  *Id.* at 1545 (emphasis added).

Ultimately, however, the ALJ's reasoning fails for two distinct reasons.  First, the ALJ appears to have conflated commercial litigation and complex litigation.  These two concepts are not equivalent.  Although some commercial litigation qualifies as complex litigation, other commercial litigation does not, *e.g.*, a straightforward commercial debt collection case.  *Cf. DL*, 924 F.3d at 594 (rejecting the suggestion that all Individual with Disabilities Education Act ("IDEA") cases qualify as non-complex litigation merely because some IDEA cases do).

Second, the ALJ's analysis proves too much.   If commercial litigation differs from "straightforward" and "informal" LHWCA work, then so too do plaintiff civil

litigation work and litigation handled by general practitioners. Yet the ALJ relied on the market rates paid in these practice areas to establish Robinowitz's hourly rate. We can discern no rational basis for the ALJ's selective concerns about the differences between formal and informal litigation. Plainly, an ALJ may not reject commercial litigation as a comparator, arbitrarily, simply because commercial litigation attorneys may charge more than other attorneys. As we explained in *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008), the adjudicator's function "is not to 'hold the line' at a particular rate."

In sustaining the ALJ's rejection of Robinowitz's evidence of commercial litigation rates, the BRB cited its earlier decision in *Christensen v. Stevedoring Services of America*, No. 03-0302, 2009 WL 4505490 (Ben. Rev. Bd. 2009). In *Christensen*, the BRB held that "rates paid to commercial/business litigators in Portland do not provide an appropriate basis for setting a market rate," because "a workers' compensation practice and a business litigation practice cannot be viewed as 'similar.'" *Id.* at *2. The BRB offered only a single rationale for treating these two practice areas as dissimilar: "business litigation routinely requires the work of a team of attorneys," such that "certain work is delegated to paralegals or less experienced attorneys at a lower cost to the client; as claimant's counsel is a solo practitioner he cannot delegate work in this manner, nor could he expect a client to pay him $400 per hour to perform all the work himself." *Id.*[6]

---

[6] The BRB also noted the employer's contention that LHWCA work "is not comparable" to commercial litigation because "there are no lengthy trials, and never any jury trials, in longshore cases," and "the rules of evidence and procedure are relaxed in administrative hearings." *Id.* It is

Even assuming these distinctions were persuasive in *Christensen*, they do not apply here. The record plainly shows that Robinowitz *does* delegate work to less experienced attorneys and paralegals: in fact, his fee declaration sought fees not only for his own work (at $450 an hour) but also for an associate attorney (at $225 an hour) and a paralegal (at $165 an hour). Furthermore, although the BRB noted that LHWCA work differs from commercial litigation because it does not involve jury trials or strict evidentiary rules, these same differences exist between LHWCA work and the practice areas that the ALJ and the BRB relied upon to determine Robinowitz's hourly rate—plaintiff civil litigation and litigation by general practitioners. These distinctions, therefore, do not support the ALJ's methodology.

### 4. The ALJ erred by rejecting Robinowitz's evidence from the 2012 Oregon State Bar Survey

The Oregon State Bar Survey reports hourly rates in two ways. One chart reports the rates charged by Portland attorneys based on their years of experience, irrespective of practice area. The second reports the rates charged by Portland attorneys based on their practice areas, irrespective of their years of experience. Robinowitz relied on the chart reporting data based on years of experience, and the ALJ rejected that evidence on the ground that relying on it would "force me to make a one dimensional fee award by omitting evidence of other [relevant] factors." The ALJ then proceeded to rely on the chart reporting rates by practice area in determining Robinowitz's hourly rate.

---

not clear, however, whether the BRB adopted this rationale advanced by the employer.

The ALJ's rejection of this evidence is not supported by substantial evidence. First, both charts rely on only a single factor: in one, that factor is years of experience, and in the other, that single factor is practice area. Although the ALJ rejected Robinowitz's survey evidence as "one dimensional," she proceeded to base her rate determination on the equally one dimensional chart reporting rates by practice area. Second, even assuming arguendo that rates based on practice area are *more* probative than rates based on years of experience, the latter rates are at least relevant. Indeed, our case law expressly approves of using the OSB Survey's years-of-experience chart to determine reasonably hourly rates. *See Shirrod*, 809 F.3d at 1089 (citing *Ramsey v. Cascade Gen., Inc.*, No. 11-0875, 2012 WL 3903607, at *2–4 (Ben. Rev. Bd. Aug. 29, 2012)). The Ninth Circuit Appellate Commissioner, moreover, relied on the years-of-experience chart in awarding Robinowitz fees in *Petitt*.

## 5.    The ALJ's decision to place Robinowitz in the 75th percentile must be vacated

Robinowitz also challenges the ALJ's decision to place him within the 75th percentile of attorneys in the plaintiff civil litigation and general practice areas under the 2012 OSB Survey. He argues that he should have been placed in the 95th percentile. It is undisputed that Robinowitz is a highly experienced attorney, with vast experience and expertise in LHWCA cases. The ALJ, therefore, reasonably could have placed Robinowitz in the 95th percentile, as both this court and the BRB have done on other occasions, albeit with respect to his appellate work. On the other hand, the BRB has placed Robinowitz within the 75th percentile on several other occasions with respect to his trial-level work. This was a judgment call that the ALJ could reasonably have resolved

either way. We nonetheless vacate the ALJ's decision to place Robinowitz in the 75th percentile because that decision appears to have been influenced by an improper factor, namely, the ALJ's unwarranted irritation with a brief that Robinowitz filed on remand from this court.

In our prior decision setting aside the ALJ's denial of benefits, we held that (1) the ALJ "unreasonably characterized Dr. Kafrouni's testimony as 'ignor[ing]' and 'dismiss[ing]' [Cloyd] Seachris's other health conditions when Dr. Kafrouni did acknowledge that other conditions in addition to cervical myelopathy contributed to Seachris's immobility and diabetes"; and (2) the ALJ "also erred in finding that Dr. Kafrouni's opinion was unsubstantiated by medical records when the preponderance of the evidence supports Dr. Kafrouni's opinion." *Seachris*, 538 F. App'x at 815. Based on these errors, we held that the "ALJ's credibility determination as to Dr. Kafrouni's testimony was 'patently unreasonable' and 'conflict[s] with the clear preponderance of the evidence.'" *Id*. at 814. We therefore concluded that the "ALJ's determination that the claimant did not establish that the cervical myelopathy caused by Cloyd Seachris's . . . 1979 work injury could have accelerated the immobility and diabetes that contributed to his death *is unsupported by substantial evidence of the record* considered as a whole." *Id*. (emphasis added). Despite the clarity of our instructions that the ALJ's credibility determination was patently unreasonable and that the ALJ's finding of no causation lacked substantial evidence support, the ALJ on remand issued an order requiring Seachris (1) "to identify those parts of Dr. Kafrouni's testimony which acknowledged other medical conditions suffered by the decedent"; and (2) "to identify the medical records in evidence that support Dr. Kafrouni's opinion." Given that these two points mirror

exactly the two defects we had identified in our prior ruling rejecting the ALJ's credibility determination, the ALJ's order effectively required Seachris to file a brief setting out the evidence that justified our reversal. Robinowitz, as counsel for Seachris, reasonably declined this invitation to second-guess our reasons for ruling in his client's favor and instead filed a short brief that reasonably took the position that "[i]n the present case, the Ninth Circuit necessarily held that Dr. Kafrouni's interpretation of the medical evidence was the only permissible one, and that his opinion determines the issue of causation as a matter of law."

Although the ALJ ultimately awarded benefits, the ALJ's subsequent fee order devotes several single-spaced pages to expressing the ALJ's palpable anger with Robinowitz's remand brief, stating that, by filing it, Robinowitz "decided that he needs to discern whether my briefing orders are wise in order to determine whether he needs to comply"; that he had thereby "appoint[ed] himself as a sort of interlocutory appellate judge and nullifies orders deemed unwise"; that "this is not acceptable behavior for an attorney"; that the ALJ "could have initiated a contempt proceeding against [Robinowitz]" but "decided that would simply prolong the litigation"; and that this behavior "would be relevant to the fee decision." There is more than a little irony to these comments, given that the premise of the ALJ's order was apparently that the ALJ was going to re-examine the correctness of *our* holdings. We perceive nothing improper—much less contumacious—in Robinowitz's pointing out that the ALJ's order was inconsistent with our mandate. Moreover, the ALJ's order confirms that Robinowitz's remand brief played a role in her rating of him at the 75th percentile, because the ALJ stated that this "troubling conduct," by itself, would "suggest[] a rating at the

median or lower" and was "not a trial strategy that is adopted by litigators in the top 5% of the bar."   In light of these comments, we cannot credit the ALJ's later assertion, in denying reconsideration, that this episode "played no role" in the fee determinations; it obviously did.  The BRB clearly erred in accepting that assertion at face value, and a remand is necessary so that the proper percentile rating can be reexamined afresh.

**6.  The ALJ's decision to include the "general" practice area in her analysis is not supported by substantial evidence**

Robinowitz argues that the ALJ erred by including the 2012 OSB Survey's general practice area—applicable to attorneys who do not devote at least 50 percent of their time to any one practice area—in her analysis.  Robinowitz points out that he is a specialist, rather than a generalist, and that the ALJ may have included the general practice area in the analysis for the improper purpose of holding down his hourly rate.

Robinowitz's argument is well-taken.  The ALJ offered no persuasive reason for including the general practice rate in her analysis, and the wide disparity between this rate ($268) and the other rates relied on by the ALJ  ($350 and $300) strongly suggests that the ALJ may indeed have been motivated by an improper purpose.[7]   We are struck in particular by the ALJ's decision to exclude commercial

---

[7] These are the 75th percentile rates for the three practice areas selected by the ALJ from the 2012 OSB Survey:  $300 for plaintiff civil litigation non-personal injury, $350 for plaintiff civil litigation personal injury, and $268 for general practice.

litigation as a comparator while including general practice as a comparator.  There is no evidence in this record to suggest that LHWCA attorneys in general, or Robinowitz in particular, are comparable to general practitioners in skills, experience, or reputation, but dissimilar to commercial litigators.  In fact, general practice, by definition, *excludes* attorneys, like Robinowitz, who specialize (devote more than 50% of their time) in litigation.  And, of course, there is abundant evidence in the record to show that Robinowitz was a specialist, with significant experience and success in handling LHWCA cases.   We therefore agree with Robinowitz that the record does not support the ALJ's inclusion of this practice area in her analysis.

*   *   *

In sum, we hold that the ALJ and the BRB committed legal error in determining Robinowitz's hourly rate and that the ALJ's determination of Robinowitz's hourly rate is not supported by substantial evidence.  We grant the petition for review on this issue and remand for further proceedings consistent with this opinion.  We note that the Oregon State Bar has published an updated survey.  The 2017 OSB Survey reports that Portland attorneys with more than 30 years' experience charged a median rate of $425 per hour in 2016.  For attorneys in the 75th percentile, the average rate was $495 per hour.  These updated rates, which the BRB should take into account on remand, provide further support for Robinowitz's requested rate.

## B.  Paralegal's Hourly Rate

We next address Seachris' contention that the ALJ erred by awarding Robinowitz's paralegal a rate of $150 per hour

rather than $165 per hour as requested.  The ALJ based the $150 rate on two factors:  rates awarded by ALJs in other LHWCA cases; and rates awarded by the federal district court in the District of Oregon.  We hold that the ALJ erred.

First, the ALJ erred by relying almost exclusively on the rates awarded by other ALJs.  As we emphasized in *Christensen*, "the BRB should not be allowed to define 'prevailing market rate' in such a way as to define the 'market' only in terms of what has been awarded by ALJs and the BRB under the LHWCA."  557 F.3d at 1054; *accord Van Skike v. Dir., OWCP*, 557 F.3d 1041, 1046 (9th Cir. 2009).

Second, the ALJ's reliance on the district court's awards is flawed because the decisions upon which the ALJ relied set paralegal rates based on survey data pertaining to the western United States as a whole, rather than the relevant Portland community.  *Holdner v. Coba*, No. 3:15-CV-2039-AC, 2016 WL 6662687, at *6 (D. Or. Nov. 9, 2016); *Pac. Coast Fruit Co. v. Ron Squires dba Four Seasons Farmers Mkt.*, No. 3:16-CV-00463-BR, 2016 WL 4443166, at *3 (D. Or. Aug. 19, 2016).  These decisions therefore do not provide a proper foundation for determining the prevailing market rate in the Portland area.  *See Shirrod*, 809 F.3d at 1089 ("Because the lodestar method requires a 'reasonable attorney's fee' to be based on market rates in the 'relevant community,' we hold that the BRB erred in affirming an attorney's-fee award based on a proxy market rate not tailored to the 'relevant community,' which, in this case, [was] Portland.").

Robinowitz provided the only evidence of market rates for Portland paralegals.  Based "on information from Phil Goldsmith and Serena Morones and [his] own knowledge,"

Robinowitz stated that "[a] reasonable current hourly rate for [his paralegal's] services is $165." Goldsmith, in turn, testified in 2009 that "the average rate for paralegals was $154 an hour" in the 2008 Morones Survey of commercial litigation rates. Respondents presented no contrary evidence. On this record, therefore, the evidence supported a rate of $165 per hour. We note that this is the rate that the Ninth Circuit Appellate Commissioner awarded to Robinowitz's paralegal in the 2014 *Petitt* decision.[8]

Accordingly, we grant the petition for review on this issue. On remand, the BRB shall award Robinowitz's paralegal a rate of $165 per hour.

## C. Reasonable Hours

As noted earlier, *see supra* at 27–28, after we previously held that the ALJ's credibility determination as to Dr. Kafrouni's testimony was "patently unreasonable," *Seachris*, 538 F. App'x at 814, the ALJ on remand ordered Seachris to file a supplemental brief addressing matters that this court had already decided. Accordingly, rather than addressing the issues called for in the ALJ's supplemental briefing order, Robinowitz used his supplemental brief to take issue with the ALJ's interpretation of this court's decision, arguing that "[t]he Ninth Circuit did not remand this case for further consideration of Dr. Kafrouni's testimony . . . . It necessarily remanded for an order allowing widow's benefits to Ms. Seachris . . . ."

---

[8] Nothing in the record suggests that the tasks delegated to a paralegal are so dissimilar in trial versus appellate work as to justify different rates for paralegals in the trial and appellate phases of litigation.

In his subsequent fee application, Robinowitz sought to recover 2.25 hours for preparation of this supplemental brief. The ALJ disallowed one half of that time—1.125 hours—on the ground that Robinowitz's brief was "non-responsive" to the supplemental briefing order.  The ALJ nevertheless acknowledged that "[i]t was proper to argue that Claimant's view was that I needed to only enter judgment in her favor."

We hold that the ALJ erred by reducing Robinowitz's hours on this ground.  "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'"  *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  Here, Robinowitz's hours were neither excessive, redundant, nor unnecessary. As the ALJ conceded, Seachris appropriately used her supplemental brief to present her interpretation of the scope of the remand.  The ALJ's denial of fees for this time, therefore, is not supported by substantial evidence.

The ALJ's anger over Robinowitz's position on the remand permeates the entire fee order, and it appears that the ALJ improperly reduced Robinowitz's fees for preparing the supplemental brief as a sanction.  Although the ALJ later asserted that Robinowitz's performance in this regard played "no role" in the fee award, the record strongly suggests otherwise.

We grant the petition for review on this issue.

## D.  Interest on Costs

The ALJ and the BRB erred by holding that the LHWCA does not permit an award of interest on costs to account for delay in payment.  The Supreme Court has made clear that interest is available in limited circumstances under federal fee-shifting statutes.  *See Perdue*, 559 U.S. at 555 ("[A]n enhancement may be appropriate if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted. . . . [T]he amount of the enhancement must be calculated using a method that is reasonable, objective, and capable of being reviewed on appeal, such as by applying a standard rate of interest to the qualifying outlays of expenses.").  Our decision in *Hobbs*, 820 F.2d at 1530–31, upon which the ALJ relied, addressed *post-judgment* interest and thus has no bearing on the question presented here.  We therefore grant the petition for review on this issue.  On remand, the BRB should determine whether an award of interest on costs is appropriate because of the "exceptionally protracted" period that this case has been pending—having been filed in 2005—in which costs were incurred between 2007 and 2016, a period five to fourteen years ago.[9]

## E.  Reassignment

The tone of the ALJ's decision and the manner in which the ALJ evaluated the evidence suggest that the ALJ may not be able to provide Robinowitz with a fair and impartial hearing on remand.  Accordingly, we *sua sponte* direct that

---

[9] Seachris, of course, has the right to update her application for fees and costs incurred since her initial application was filed in 2016, five years ago.

the BRB reassign this matter to a different ALJ on remand to avoid the appearance of partiality. *See Smolniakova v. Gonzales*, 422 F.3d 1037, 1054 (9th Cir. 2005) ("We further direct the BIA not to return the case to [Immigration Judge] Anna Ho."); *Nuru v. Gonzales*, 404 F.3d 1207, 1229 (9th Cir. 2005) ("Given his comments during the hearing and our strikingly different appraisal of the record, we order that the case be assigned to a different immigration judge who will afford Nuru the impartiality to which all applicants are entitled."); *Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001) ("We remand with instructions that the matter be assigned to a different ALJ."); *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 537 (4th Cir. 1998) ("Finding the ALJ made several errors of law including failing to consider all of the relevant evidence and to adequately explain his rationale for crediting certain evidence, we conclude that review of this claim requires a fresh look at the evidence, unprejudiced by the various outcomes of the ALJ and the [Benefits Review] Board's orders below. Accordingly, we reverse and direct the Board promptly to remand to a new ALJ . . . .").

## IV.  CONCLUSION

We grant the petition for review and remand for proceedings consistent with this opinion.

**PETITION GRANTED and REMANDED.**