NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

NOV 5 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TUFA IUVALE,<br><br>        Petitioner,<br><br>  v.<br><br>COASTAL MARINE SERVICES,<br>Employer; SEABRIGHT INSURANCE<br>COMPANY, Carrier; DIRECTOR, OFFICE<br>OF WORKERS' COMPENSATION<br>PROGRAMS,<br><br>        Respondents. | No. 19-71172<br><br>BRB Nos. 18-0159<br>           18-0159A<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Benefits Review Board

Submitted September 3, 2020[**]
Seattle, Washington

Before: TASHIMA, BYBEE, and COLLINS, Circuit Judges.

Memorandum joined by Judge BYBEE and Judge COLLINS;
Dissent by Judge TASHIMA

Tufa Iuvale petitions for review of the decision of the Benefits Review

Board ("BRB") affirming the amount of attorney's fees and costs awarded to his

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes that this case is suitable for decision without oral argument. *See* FED. R. APP. P. 34(a)(2)(C).

attorney, Jeffrey Winter, by the Administrative Law Judge ("ALJ") under § 28 of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 928. Winter sought fees based in part on a $445 hourly rate, but the ALJ awarded him only a reduced amount of fees, using hourly rates ranging from $373 in 2012 to $396 in 2016. The BRB affirmed the award, and Iuvale petitioned for review. We have jurisdiction under § 21(c) of LHWCA, 33 U.S.C. § 921(c). "'We review the [BRB's] decisions for errors of law and adherence to the substantial evidence standard.'" *Seachris v. Brady-Hamilton Stevedore Co.*, 994 F.3d 1066, 1076 (9th Cir. 2021) (citation omitted). The BRB was required to "'accept the ALJ's findings unless they are contrary to law, irrational, or unsupported by substantial evidence,'" and we "'independently evaluate the evidence in the administrative record to ensure the BRB adhered to the correct standard'" in reviewing the ALJ's decision. *Id*. (citations omitted). We deny the petition.

**I**

Because Winter, in seeking fees in this case, presented essentially the very same evidence that he had presented to the same ALJ in a prior case, coupled with a few new items of evidence supporting the current application, the ALJ properly framed the analysis of the fee-rate issue by (1) considering whether the new evidence or other changed circumstances required a different conclusion from the ALJ's analysis in the prior case; and (2) otherwise adopting his analysis from the

2

prior case.[1]  In such a situation, we review both the prior decision that was adopted by reference, as well as the ALJ's analysis of the new evidence offered in support of the current application.

A

We reject Winter's contention that the referenced prior decision—*Zumwalt v. National Steel & Shipbuilding Co.*, OALJ Nos. 2011-LHC-00806, -01935 (Sept. 20, 2016)—applied incorrect legal standards or is otherwise not supported by substantial evidence.

In contrast to *Seachris*, in which the ALJ wrongly concluded that the attorney had not carried his initial burden of production, *see* 994 F.3d at 1077, the ALJ in *Zumwalt* properly held that Winter had presented sufficient evidence to "establish[] a reasonable hourly billing rate," albeit at a lower rate of $385 for work performed in 2014.  The *Zumwalt* decision properly focused the analysis on

---

[1] This situation thus differs from one in which an agency relies on its prior hourly rate rulings that, although involving the same attorney, may involve a potentially different supporting record.  *Cf. Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1055 (9th Cir. 2009) (agency is not required "in every fee award decision" to "make new determinations of the relevant community and the reasonable hourly rate," but "must make such determinations with sufficient frequency that it can be confident—and we can be confident in reviewing its decisions—that its fee awards are based on current rather than merely historical market conditions").  Where, as here, the attorney submits essentially the very same materials to the very same ALJ, we can hardly fault that ALJ for adopting by reference his prior decision analyzing in detail those very same materials, and then considering what additional evidence or changed circumstances are presented in the new application.

"whether the rates charged" by litigators in other lines of practice "*are relevant comparators—i.e.*, whether the rates involve '*similar services* by lawyers of reasonably comparable skill, experience, and reputation.'" *Id*. at 1078 (emphasis added) (citation omitted). Specifically, the detailed analysis in *Zumwalt* carefully considered each item of evidence and took account of what the ALJ considered to be relevant differences in the geographic markets reflected in that evidence as well as relevant differences in the litigation-related tasks at issue. *Id*. at 1078–79 (explaining that, in evaluating whether rates involving another area of practice involve "similar services," it "*is* reasonable . . . to distinguish between complex and non-complex litigation" and to take account of differences between other types of litigation and "LHWCA work").

Although Winter disagrees with some of the task-based and geographic-based distinctions that the ALJ drew, and with the ALJ's assessment of the potential bias of a declarant, we cannot say that these judgments reflect an impermissible view of the record evidence. The ALJ's decision reflects that he understood that his task was to determine, using the evidence presented, a market-based rate for the work Winter had performed, and we therefore disagree with the dissent's suggestion that the ALJ was relying on his "own subjective assessment of the relative value of LHWCA work." *See* Dissent at 5. Even if we might not have weighed the evidence the same way ourselves, the ALJ's explanations are cogent

4

and internally consistent, and we see no indication of an "improper purpose of holding down [Winter's] hourly rate." *Seachris*, 994 F.3d at 1082; *see also id*. at 1079–80 (holding that the distinctions drawn by the ALJ, in weighing the evidence of rates involving other practice areas, must be adequately explained based on rational and consistently-applied distinctions that are supported by the evidence in the record, including the evidence concerning the skills and experience of the attorney at issue).

**B**

We also find no grounds for disturbing the ALJ's assessment of the new evidence that Winter submitted with the current application.

First, the ALJ permissibly concluded that the additional evidence of Winter's professional awards and accolades was cumulative, given that the ALJ had already determined in *Zumwalt* that Winter displayed "among the highest levels of skill, experience, and reputation for quality Longshore Act representation in the San Diego legal community." Second, the ALJ reasonably concluded that the *deposition-specific* rates recommended for California state workers' compensation attorneys were not inconsistent with the *overall* hourly rates that he had determined in *Zumwalt*. Third, the ALJ properly explained why he discounted Winter's evidence concerning rates awarded to several attorneys in an ERISA case. In addition to noting that there was not enough evidence to determine "the skills,

5

experience, and reputations of the lawyers" at issue in the ERISA case, the ALJ concluded that ERISA law "is a highly specialized, arcane area that commands considerably higher hourly rates than workers' compensation." Even if the record might also have supported a different conclusion, the ALJ's determinations are supported by substantial evidence and are not contrary to law.

## II

Finally, we hold that the BRB did not abuse its discretion by declining to adjust Winter's rates to account for a delay in payment. *See Christensen*, 557 F.3d at 1056. Enhancement is not warranted for an "ordinary delay," but it may be appropriate in cases involving unanticipated delays that are "extraordinary" or "extreme." *Anderson v. Director, OWCP*, 91 F.3d 1322, 1325 (9th Cir. 1996). Here, the BRB properly noted that "the majority of counsel's work took place in 2016 for which he was awarded 2016 rates" in 2017. It was not an abuse of discretion to conclude that the modest amount of work performed in 2012, 2013, and 2015 did not present the sort of lengthy delay that would warrant an enhancement.

The petition for review is **DENIED**.

*Iuvale v. Coastal Marine Services*, No. 19-71172

TASHIMA, Circuit Judge, dissenting:

Under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 928(a), hourly rates "are to be calculated according to the prevailing market rates in the relevant community." *Seachris v. Brady-Hamilton Stevedore Co.*, 994 F.3d 1066, 1076 (9th Cir. 2021) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Calculating hourly rates in accordance with market rates ensures that LHWCA attorneys are "awarded fees commensurate with those which they could obtain by taking other types of cases," *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 (9th Cir. 2009) (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008)), which in turn ensures that fee awards are "sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case," *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

Accordingly, an administrative law judge ("ALJ") errs by failing to base an hourly rate determination on prevailing market rates. In *Van Skike v. Director, Office of Workers' Compensation Programs*, 557 F.3d 1041, 1046–47 (9th Cir. 2009), for instance, we held that the ALJ "committed legal error when he rejected in their entirety the market indicators submitted by [claimant's attorney] and instead relied on other decisions in previous cases, when the judges in those previous cases failed to base their fee awards on market rates." Similarly, in

*Christensen*, 557 F.3d at 1054, we held that the Benefits Review Board ("BRB") erred by basing hourly rate determinations on "what has been awarded by ALJs and the BRB" in other cases. We emphasized that "*Blum* requires the BRB to consider the relevant market rate when it awards attorney's fees." *Id.* We have also held that an ALJ may not rely on "billing rates reported by workers'-compensation lawyers" if those rates are "capped by state law" and "thus not reflective of market rates." *Shirrod v. Dir., OWCP*, 809 F.3d 1082, 1090 (9th Cir. 2015),

The ALJ strayed from these principles here. The ALJ reasoned that, because LHWCA work involves less skill than other types of litigation, he could not rely on prevailing market rates for other types of litigation to calculate an attorney's hourly rate. Instead, the ALJ concluded that these prevailing market rates would have to be discounted "significantly to reflect the difference in needed skills." As the ALJ explained:

> When evaluating market rates in other areas of legal practice, I take into account that legal representation under the Longshore Act does not require skills needed for jury trials; includes a number of legal presumptions that benefit claimants and ease the task of their attorneys; does not require mastery (or even familiarity) with formal rules of evidence; does not require claimants' attorneys to manage relationships with large corporate clients; does not involve lengthy, complex litigation in which an attorney must

2

manage over years a changing cadre of associate attorneys, paralegals, and other staff; and allows attorneys who make mistakes an almost unlimited entitlement to reconsideration. . . . Thus, for example, hourly rates for employment lawyers who try cases to juries or litigate complex class actions might give useful data when determining a market rate for a Longshore Act claimant's lawyer, but the employment lawyer's hourly rate would have to be reduced significantly to reflect the difference in needed skills.

The ALJ then broadly applied this principle to reject attorney Jeffrey Winter's evidence of prevailing market rates. The ALJ accorded "little weight" to Winter's evidence of prevailing market rates in ERISA cases because "ERISA is a highly specialized, arcane area" of the law. "To the extent [the ALJ could] draw an inference, it would be by reducing the rates paid to the ERISA lawyers to account for the greater skill their work requires." The ALJ applied the same reasoning to counsel's evidence of prevailing market rates for uncapped workers' compensation work. Because the uncapped work involved depositions, and "[w]ork at deposition . . . requires skills that are more highly compensated than most other tasks litigation attorneys do," "that rate must be adjusted downward to make it applicable to all the kinds of work Mr. Winter performed." The ALJ applied the same principle to Winter's evidence of prevailing market rates in maritime litigation ("[E]ven if Longshore work is viewed as maritime, it requires less skill

3

than most maritime litigation," business litigation ("For the general reasons stated above, I would expect Longshore Act attorneys working in the same geographical area to bill at rates somewhat lower than business litigators."), employment litigation ("[An] employment lawyer's hourly rate would have to be reduced significantly to reflect the difference in needed skills," civil rights litigation ("[C]ivil rights litigators command higher fees than [Longshore Act] attorneys for the reasons I discussed."), and civil litigation generally ("[C]ivil . . . litigators command higher fees than [Longshore Act] attorneys for the reasons I discussed."

It is difficult to see how, under the ALJ's approach, Winter could ever satisfy his burden to "produce satisfactory evidence" of prevailing market rates. *Christensen*, 557 F.3d at 1053. Because the ALJ concluded that LHWCA work involves less skill than every other type of litigation (with the possible exception of uncapped workers' compensation work not involving depositions or other highly skilled tasks), any evidence of prevailing market rates Winter could offer would have been subject to the same objection. The ALJ would have rejected the evidence for the same reason.

The problems with the ALJ's approach are twofold. First, as discussed, the law is clear that hourly rates must be calculated according to prevailing market rates—rates established by supply and demand and reflecting economic conditions.

4

*Blum*, 465 U.S. at 895; *Seachris*, 994 F.3d at 1076; *Christensen*, 557 F.3d at 1054. Here, the ALJ rejected Winter's evidence of prevailing market rates and instead calculated Winter's hourly rate based on the ALJ's own subjective opinion about what LHWCA work is worth. The ALJ may have noted Winter's evidence of prevailing market rates as a reference point, but the hourly rate the ALJ ultimately awarded was based entirely on the ALJ's personal view about how much less LHWCA work is worth compared to other types of litigation. The ALJ discounted prevailing market rates, not based on objective, market-based criteria, but based solely on the ALJ's own subjective assessment of the relative value of LHWCA work. This was error. The ALJ's "function is to award fees that reflect economic conditions" in the relevant community, *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008), not the ALJ's subjective assessment of the value of LHWCA work.

Second, the ALJ's methodology undermines "the underlying purpose of relying on the marketplace: to calculate a reasonable fee sufficient to attract competent counsel." *Christensen*, 557 F.3d at 1054 (quoting *Student Pub. Interest Rsch. Grp. of N.J., Inc. v. AT & T Bell Labs.*, 842 F.2d 1436, 1446 (3d Cir. 1988)). The ALJ's approach ensures that attorneys are paid less for LHWCA work than for handling other types of cases. This dual rate structure, in turn, ensures that

5

workers with meritorious claims will struggle to attract capable counsel: an attorney such as Winter can either handle LHWCA cases, at below market rates, or he can handle other types of cases, at higher market rates.[1]

the ALJ's departure from prevailing market rates may have been well-intentioned. Nonetheless, the case law is clear that hourly rates should be "in line with those prevailing in the community for *similar* services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 896 n.11 (emphasis added). Because the ALJ perceived LHWCA work as dissimilar from virtually all other types of litigation, the ALJ was understandably cautious about calculating Winter's hourly rate in accordance with prevailing market rates applicable to those other practice areas. The law is clear, however, that hourly rates must be set by *market* conditions: An ALJ must rely on market rates. Thus, even if an ALJ is persuaded that LHWCA work is dissimilar from other types of litigation, his task is to calculate an hourly rate based on the most similar and appropriate market-rate comparators available. *See Seachris*, 994 F.3d at 1077–78 (noting that ALJs must rely on the best prevailing market rate information

---

[1] The ALJ observed that "Winter has among the highest levels of skill, experience, and reputation for quality Longshore Act representation in the San Diego legal community." But it is also clear that Winter is capable of handling other types of cases. He has over thirty years of legal experience, has conducted over forty trials, and has handled a number of Ninth Circuit appeals.

available).  Abandoning market rates, and substituting the ALJ's own subjective valuation of the lawyer's services, is not an option.

Because the ALJ failed to follow the proper procedure, I would grant Iuvale's petition for review.  Accordingly, I respectfully dissent.